### F. M. CABINESS v. THE STATE.

No. 1505.   Decided April 10, 1912.

Rehearing Denied May 8, 1912.

**1.—Keeping Disorderly House—Bawdy House—Charge of Court.**

Where the indictment, upon trial of keeping a bawdy house, properly charged the offense under Article 500; Revised Penal Code, in the conjuctive form, and the court correctly submitted the question in the disjunctive form, there was no error.

**2.—Same—Misdemeanor—Practice on Appeal.**

In misdemeanor cases this court will not consider any objections to the charge of the court unless bills of exception are taken at the time the charge is given, and special charges requested covering the points, and in case of refusal, a bill of exceptions must be reserved thereto.

**3.—Same—Sufficiency of the Evidence—Newly Discovered Evidence.**

Where, upon trial of keeping a bawdy house, the evidence sustained the conviction, and the alleged newly discovered evidence in no way met the requirements of the law, there was no error.

**4.—Same—Indictment—Duplicitous Pleading—Rule Stated.**

Where several ways are set forth in the same statute by which an offense may be committed and all are embraced in the same definition and made punishable in the same manner, they are not distinct offenses and they may be charged conjunctively in the same count. Following Phillips v. State, 29 Texas, 226, and other cases. Distinguishing Porter v. State, 48 Texas Crim. Rep., 125; Novy v. State, 62 Texas Crim. Rep., 492, 138 S. W. Rep., 139.

**5.—Same—Case Stated—Conjunctive Pleading.**

Where the indictment alleged that the defendant did then and there unlawfully keep and was concerned in keeping a certain house then situate as

a bawdy house and as a house where prostitutes were permitted to resort and reside for the purpose of plying their vocation, the same was sufficient under Article 500, Revised Penal Code.

### 6.—Same—Duplicitous Pleading—Motion to Quash—Waiver.

Where no motion to quash was made in the court below on the ground of duplicitous pleading, and the question of insufficient indictment on that ground was not raised in the lower court the defendant thereby waived such defect. Following Nicholas v. State, 23 Texas Crim. App., 317, and other cases.

Appeal from the Criminal District Court of Harris. Tried below before the Hon. C. W. Robinson.

Appeal from a conviction of keeping a bawdy house; penalty, a fine of $200 and twenty days confinement in the county jail.

The opinion states the case.

*Andrews, Ball & Streetman,* for appellant.—On the question of the insufficiency of the indictment: Hammons v. State, 29 Texas Crim. App., 445; Porter v. State, 48 Texas Crim. Rep., 125; Novy v. State, 62 Texas Crim. Rep., 492, 138 S. W. Rep., 139.

On the question of the insufficiency of the evidence: McElhaney v. State, 12 Texas Crim. App., 231; Harmes v. State, 26 id., 190; Johnson v. State, 28 id., 562; Allen v. State, 15 id., 320; Burton v. State, 16 id., 156; Gamel v. State, 21 id., 357; Loraine v. State, 22 id., 640; Sara v. State, id., 639; Owens v. State, 53 Texas Crim. Rep., 1; Machen v. State, id., 115; Steed v. State, 43 id., 567; Ramey v. State, 39 id., 200; O'Brien v. State, 55 id., 431.

On question of the court's charge: Guest v. State, 24 Texas Crim. App., 530; Hickman v. State, 22 id., 441; English v. State, 29 id., 174.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—On September 26, 1910, the grand jury of Harris County indicted appellant charging that on or about August 25, 1910, in said county, he "did unlawfully keep and was concerned in keeping a certain house then situate, as a bawdy house and as a house where prostitutes were permitted to resort and reside for the purpose of plying their vocation." He was convicted, fined $200 and twenty days in jail.

The court in charging the jury correctly stated the offense and defined a bawdy house and then required the jury to believe beyond a reasonable doubt that on or about the time charged the appellant did "keep a bawdy house or was concerned in keeping a bawdy house, as that term has hereinbefore been explained to you," to find him guilty, etc. The prosecution was had under article 500, Penal Code (new). The indictment clearly and properly charged the offense in the conjunctive form. The court correctly submitted the question in the disjunctive form.

There is no bill of exceptions in the record. Neither is there any bill of exceptions to the charge of the court in any particular, nor was any special charge requested on any subject. It has been the uniform holding of this court for many years that in misdemeanor cases as this is, this court can not and will not consider any objections to the charge of the court unless bills are taken at the time the charge is given, and special charges requested covering the point, and bills taken at the time to the refusal of the court to give such special charges. Hence, we can not consider any of appellant's objections to the charge of the court for the first time and only made in the motion for new trial. Basquez v. State, 56 Texas Crim., 329; sec. 813, subdiv. 6, White's Ann. C. C. P., p. 533, for collated cases.

The evidence showing the appellant's guilt is ample, clear and convincing. Appellant's claim, in his motion for new trial, of newly discovered evidence in no way meets the requisites therefor prescribed by law.

We have carefully considered the record and appellant's brief and authorities cited by him and are of the opinion that no error is shown that would authorize or permit this court to reverse the case. The judgment will, therefore, be affirmed.

*Affirmed.*

ON REHEARING.

May 8, 1912.

PRENDERGAST, JUDGE.—It is but just to appellant's attorneys to state that they did not represent him in any way in the lower court, but he was represented by another attorney altogether. It seems that his attorneys in this court had no connection with the case until after, not only the trial in the court below, but the preparation of the record too.

In effect the appellant in this court raised but two questions, first, he claims the evidence is insufficient to sustain the verdict, and, second, that the indictment is fatally defective because duplicitous. He seems to insist that this court neither considered nor passed upon either of these questions in the original opinion. He is mistaken in this. On the first question in the original opinion we said: "The evidence showing the appellant's guilt is ample, clear and convincing." On the other question we said: "The indictment clearly and properly charged the offense in the conjunctive form. The court correctly submitted the question in the disjunctive form."

We did not then deem it necessary to give the evidence or discuss at any length the said questions raised. In view of appellant's vigorous and forcible contentions on both of these points we have concluded to again take them up and review them more fully.

First, as to the sufficiency of the evidence. The undisputed evidence shows, and the appellant himself testified that he owned a large two-story fourteen-room house at No. 503 Rusk Avenue, in the

city of Houston, Texas, and that he run and operated this house at the time the offense is charged to have been committed, on or about August 25, 1910.

Mrs. J. C. Plummer, for the State, testified: "I live at No. 510 Rusk Ave. My place is almost directly across Rusk Avenue from the house of F. M. Cabiness. I know the reputation of the house that was occupied by the defendant during the month of August, 1910; I know what its reputation was at that time; the reputation was bad; it had the reputation, in that neighborhood, of being a bawdy house. I complained to the chief of police about the place. I saw cabs come up to the house during all hours of the night and day. Women rode in these cabs; men rode in some, and in some men and women together. They went into the Cabiness house. There was much loud talking and cursing. I saw people go to and from the house at all hours of the night and saw them carrying beer in the house. After I made the complaint, Cabiness, the defendant, came to me and acknowledged that it was a house of prostitution, and he said that he could not make a living by keeping respectable people there.

Cross-examination: "I have known the defendant for several years. I knew him while his wife was living. When she was living the house was all right, as far as I knew. I went over there when his wife died and helped them. I know there was one or two women living in the house. I do not know whether there was one or two women living in the house. I do not know whether there was a dressmaker in the house or not; there was a sign on the house which said 'dressmaking.' I know that Cabiness did not put the women out of the house; the officers put them out."

Mrs. J. Mellinger, for the State, testified: "I live at 718 Brazos Street; the front of my house is just across Brazos Street from the Cabiness house; his back gate, or side gate, is almost directly in front of my house; he lived there during the month of August, 1910. I know the reputation of that house during that time; it was bad; its reputation in that community was that of a house of ill fame, a bawdy house. I saw automobiles and hacks driving up to the Cabiness house at all hours of the day and night, bringing men and women. These people were noisy and boisterous and my sleep was disturbed by the disorder at that house. After the complaint was filed against Cabiness, he came to me and begged that the prosecution be withdrawn, and admitted that he had women of bad character in his house. He promised to conduct the place more orderly and to get the women out of his house; he did not do this; they stayed there several weeks, until the chief of police put them out."

Cross-examination: "It is not a fact that Mr. Cabiness came to me and told me that he did not know the character of the women at the time he took them in, but that he would put them out at once; he did not put them out at once. Things continued pretty much the same, except that the hacks stopped at the back gate instead of at

the front gate. I knew the defendant's wife died about a year ago. I heard no complaint of the house prior to her death. The defendant told me that he would prolong this trial from time to time and wear us out coming to court. It is awful that we have to come."

A. S. Caldwell, for the State, testified: "I know F. M. Cabiness, the defendant in this case. I know that he was the owner of the house at 503 Rusk Avenue in August, 1910. We sold the place to him and he is paying for it in regular installments. He was the owner of the place in August, 1910; this house is located in Houston, Harris County, Texas."

George Peyton, for the State, testified: "I had occasion to investigate the house at 503 Rusk Avenue; I saw Cabiness there; I visited the house on two or three occasions; F. M. Cabiness had control of the premises; I found in the house a woman named Lottie Davis, whom I knew to be a common prostitute; she said she lived there; her mother, named Davis, was also in the house; the reputation of the elder Davis woman was bad; Cabiness promised to get these women out of the house, but he failed to do so, and did not put them out until finally I, together with the chief of police, went out and put them out."

The appellant thereupon introduced his testimony. Judge Kittrell, judge of the Sixty-First District Court, testified that he knew the appellant in Walker County and his family for years; was at school with his brother at Huntsville; he knew his reputation in Walker County before his removal to Houston; it was good, and that of a law-abiding citizen and he was surprised that he had been charged with running a bawdy house. On cross-examination he said he knew nothing about the house that defendant had been running in Houston, and that he had not been intimately associated with him during the four or five years that he had been there.

Mr. Williams, for him, testified that he knew appellant for some years at Huntsville and had seen him in Houston soliciting people at the depot to stop at his house; he had given him, the witness, one of his cards on which was printed "furnished rooms." He knew the reputation of the defendant and it was good. Never knew him to have been charged with any offense.

Judge Robinson, the judge of the Criminal District Court, before whom this case was tried, for him, testified, that he knew the appellant and his family a number of years in Walker County and for some time in Houston; he met him at the depot a number of times soliciting trade for his rooming house; he was handing out cards at the depot; that he knew the reputation of defendant in Walker County, and it was good, but he knew nothing of him in Houston, except when he met him on the streets and at the depot soliciting patronage.

Mr. Burkett, for him, testified that he had known him about five years, both in a social and business way, and during that time he

was honest in his dealings, upright and bore a good reputation. The witness did not live in his neighborhood, but probably a mile from him and did not know anything about his house or its reputation in that community.

Mr. Culpepper, for him, testified that he had known him several years and had had business dealings with him; that he was always square and honest in his dealings; that he had been in his house and never saw anything wrong about the house; he had a number of roomers at his place and he bore a good reputation.

Appellant himself testified as follows: "I live at No. 503 Rusk Avenue, in Houston, Harris County, Texas. I own a large two-story fourteen-room house. Since my wife died I advertised for a housekeeper to take charge of my house and to take care of my two little children, and I rented out my rooms to both regular and transient roomers, and some for light house-keeping purposes; it was customary for me to go down every day and meet the trains as they came in and would then solicit for my house; a great many times such roomers as I secured would take a cab from the station to my house, and at other times they would take automobiles; I rented a front room to two women who were dressmakers, and these women had friends to come to the house and take them out automobile riding at different times; I afterwards found out that these two women were not of good character and that they were running around with men and having a great many people come to their room and see them; I immediately informed them that they would have to leave my house; I did not believe they were good women; I thereupon endeavored to eject the said women, and they would not leave until Chief Ellis came down to see me, bringing Detective Peyton, and Detective Peyton told these women that they would have to leave the house, and they thereupon did leave my house. The witnesses Mrs. Mellinger and Mrs. Plummer came to see me and told me that the two women dressmakers would have to leave my house, and I told Mrs. Mellinger and Mrs. Plummer that I found these women were not of good character and were offensive to my neighbors, that I would have them move, and I thereafter used my best efforts to get these two women to leave my house. I never had any knowledge of anything going wrong in or about my house until the two dressmakers rented a room from me, and when I learned that these women were not of good character I immediately requested them to vacate the premises, and I obtained a housekeeper that I knew nothing about; the said housekeeper was there with her husband and two little children, and one Lottie Davis, whom Detective Peyton testified about, never lived or resided in my house, and my housekeeper was the mother of said Lottie Davis, and the said Lottie Davis had only been in my house on two occasions, at which times she came there to see her mother, and I knew nothing about the character or reputation of Lottie Davis."

It is unnecessary for us to discuss or analyze this testimony. We simply say, as we said in the original opinion, "the evidence, showing the appellant's guilt, is ample, clear and convincing," even to us. But if it was not so to us, it was clearly and amply sufficient to authorize the jury to convict him, as it did. They saw and heard the witnesses testify and their manner of testifying. The district judge, before whom the case was tried and who was one of appellant's witnesses, also heard the testimony, saw the witnesses, their manner of testifying and refused to grant appellant a new trial. The jury and the lower court under our law are made the exclusive judges of the credibility of the witnesses and the weight to be given to their testimony.

The second question: Was the indictment duplicitous? The prosecution in this case was had under Penal Code, article 496 (359), which is: "A 'bawdy house' is one kept for prostitution or where prostitutes are permitted to resort or reside for the purpose of plying their vocation. . . ." And article 500 (361), which on this subject is: "Any person who shall, directly or as agent for another, or through any agent, keep or be concerned in keeping, or aid or assist or abet in keeping a bawdy house . . . in any house . . . shall be punished by a fine of two hundred dollars, and by confinement in the county jail for twenty days for each day he shall keep, or be concerned in keeping . . . such bawdy house." The indictment in this case charges that the appellant, on or about August 25, 1910, in Harris County, Texas, "did unlawfully keep and was concerned in keeping a certain house then situate, as a bawdy house and as a house where prostitutes were permitted to resort and reside for the purpose of plying their vocation."

We are clearly of the opinion that the indictment in this case is in no way duplicitous. It is in strict accordance with all the text-books on the subject, and also in accordance with all of the decisions of this State on the question. Judge White, in section 405, p. 297, in his Annotated C. C. P., collates some of the authorities and therein lays down therefrom the correct rule as follows: Where several ways are set forth in the same statute by which an offense may be committed and all are embraced in the same definition and made punishable in the same manner, they are not distinct offenses and they may be charged conjunctively in the same count. See Phillips v. State, 29 Texas, 226; Lancaster v. State, 43 Texas, 519; Berliner v. State, 6 Texas Crim. App., 181; Copping v. State, 7 Texas Crim. App., 61; Day v. State, 14 Texas Crim. App., 26; Nicholas v. State, 23 Texas Crim. App., 317; Davis v. State, 23 Texas Crim. App., 637; Comer v. State, 26 Texas Crim. App., 509; Howell v. State, 29 Texas Crim. App., 592; Laroe v. State, 30 Texas Crim. App., 374; Willis v. State, 34 Texas Crim. Rep., 148; Brown v. State, 38 Texas Crim. Rep., 597; Moore v. State, 37 Texas Crim. Rep., 552; State v. Smith, 24 Texas, 285; State v. Edmonson, 43 Texas, 162. See also section

383, p. 286, White's C. C. P. In many of these cases the text-book authorities are cited to the same effect. It is unnecessary for us to cite them here or any other of the later cases.

The case of Porter v. State, 48 Texas Crim. Rep., 125, cited and so much relied upon by appellant is in no way in conflict with the principle or authorities above cited. In that case, as the opinion shows, the appellant was prosecuted in one count for two entirely separate and distinct offenses under two entirely separate and distinct provisions of the statute and the penalty for each was different. Again, appellant cites and relies upon what this court said in Novy v. State, 62 Texas Crim. Rep., 492, 138 S. W. Rep., 139, to the effect that under the same article, 500, of the Penal Code, on the subject of a disorderly house, wherein we said under that article, "at least three separate and distinct *offenses* were made." This was an incorrect statement. They are not separate and distinct offenses, but several distinct and separate ways set forth in the statute by which the offense may be committed.

Again, even if the indictment had been duplicitous, as no motion was made in the court below to quash the indictment on that ground, nor the question in any other way properly raised in the lower court, under the authorities, appellant waived that defect in the indictment. Nicholas v. State, 23 Texas Crim. App., 317; Coney v. State, 2 Texas Crim. App., 62; Tucker v. State, 6 Texas Crim. App., 251; Rumage v. State, 55 S. W. Rep., 64, and the authorities cited in the opinions in said cases.

The motion will be overruled.

*Overruled.*