### MAMIE COX v. THE STATE.

#### No. 4701.   Decided December 5, 1917.

#### Rehearing denied June 28, 1918.

**1.—Vagrancy—Common Prostitutes—Statutes Construed—Insufficiency of the Evidence.**

Vagrancy is a present condition or status and not an abandoned condition or status.   A party may have been a vagrant in the past and this may not bar prosecution for keeping a disorderly house, but if she has abandoned such vice, it does not justify the prosecution for a present status of vagrancy, under articles 634-640, Penal Code.   Prendergast, Judge, dissenting.

**2.—Same—Rule Stated—Past Condition—Abandonment—Common Prostitute.**

It is not sufficient that the defendant may have been in the past a common prostitute, but that status must now exist to justify her arrest and detention; and where she has abandoned such a life, she is not a vagrant, although she may be subject to prosecution for having kept a disorderly house.   Following Pascal v. State, 138 S. W. Rep., 166, and other cases.   Prendergast, Judge, dissenting.

**3.—Same—Insufficiency of the Evidence—Common Prostitute—Sporadic Acts.**

Where, upon trial of vagrancy on the ground that defendant was a common prostitute, etc., the evidence did not show the accused to be a vagrant in that

Vol. 84 Crim.-4

she was a common prostitute, and that only sporadic acts of sexual intercourse were shown, the conviction could not be sustained. Following Springer v. State, 16 Texas Crim. App., 591. Prendergast, Judge, dissenting.

Appeal from the County Court of Travis. Tried below before the Hon. D. J. Pickle.

Appeal from a conviction of vagrancy by reason of being a common prostitute; penalty, a fine of fifty dollars.

The opinion states the case.

*White, Cartledge & Wilcox* and *Brownlee & Goldsmith,* for appellant. —Cited cases in the opinion.

*E. B. Hendricks,* Assistant Attorney General, for the State.

PRENDERGAST, Judge.—The grand jury of Travis County on June 20, 1917, duly indicted appellant, alleging therein that "on or about October 15th, 1916, and thence continuously up to May 1, 1917, she was, and is, a common prostitute and vagrant, and during said time she did pursue the avocation of a common prostitute and did make a business of selling the use of her person to the male sex for the purpose of illicit carnal intercourse." She was tried on August 16, 1917, convicted and fined $50.

The State introduced several witnesses who gave material incriminating evidence against her. The substance and effect of their testimony will be here given.

Littlepage Hill testified that he had lived in Travis County all his life and in Austin in November and December, 1916, at which time he was driving a service car. He lived at Manor at the time he testified. That he knew appellant; that in November or December, 1916, he met her and another girl, whom he did not know, on a certain street in Austin, it seems by engagement, took them in his automobile, drove up to the side entrance of the Avenue Hotel and there picked up two men, strangers to him, whose names he did not know, and who were standing in the door. As soon as he stopped these men immediately walked out and got in his car with the women; that he then took the two couples south, across the river and up it some quarter or half mile to a secluded place and they had him stop. The two couples than got out of his car, went off out of his sight, remained some thirty or forty minutes, returned, got in his car and had him drive them back to the city. This, it seems, was at night. Of course, he did not see what they did after they got out of his sight.

Jim Sullivan testified that he had lived in Austin all his life and for about a year and a half had been driving a service car; that he knew appellant and had known her a year or two; that about March 1st he phoned her and she met him with his car near her house where she then lived in Austin. He had a man in his car with him who was a

traveling man stopping at the Driskill Hotel. He had never seen the man before this occasion. He took them out some blocks on the Manor road, left that road and went up a lane some distance from it and stopped. She and this strange man then got out of the car together, went some distance out of his sight, remained away some thirty minutes, came back, got in the car together, and he took her to near her home, and a block or a half therefrom, and she got out of his car. That about a week after that he took another strange man out to near her house, where she met him, got in his car and he took them out the same way to the same place where he had taken her the week before. That when they got out of his car they were gone out of his sight some thirty minutes, when they came back, got in his car, and he drove to near where she lived. She got out and went on alone and he went on with the man. Both of these occasions were at night.

R. M. Thompson testified that he knew appellant and had known her since October, 1916; that he lived in the same house she did from about October 24th to March 13th, 1917, except six weeks of the time when he was in Waco; that the woman whom he afterwards married was living there in the house during this time; that he slept with this woman there during all this time. That while he was thus living with the woman he afterwards married, Edgar Martin was there with appellant, sleeping with her. That he had many times seen her in bed with him at night. That during this time there were other men there to see appellant who were total strangers to him, and in addition he at one time saw a certain man who lived in Austin at her house.

W. H. Farley, who lived at Hutto, in Williamson County, on the International & Great Northern Railway, testified that he had known appellant from 1915 when he was at Austin in the high school; that about March 1, 1917, he phoned her and another girl at Austin and got them to come to Hutto that night to meet him and J. P. Hutto, who also lived at Hutto. That appellant and this other girl that night went on the International & Great Northern train to Hutto, where he and his companion met them, that they took them in the depot, where there were two cots, and "stayed" with them from that time until nearly 5 o'clock next morning, when they returned to Austin on the International & Great Northern early train; that that night in the depot he "stayed" with the other girl and Hutto "stayed" with appellant, each indulging in sexual intercourse with the respective girls. He paid his girl $10 and Hutto paid appellant $10.

That one week after that appellant and another girl went from Austin to Hutto at the same time on the International & Great Northern train, reaching there about 11 o'clock at night and returned from there between 4 and 5 o'clock the next morning. That he and Will Goodwin met the two girls at Hutto at the time, and took them in an automobile to a house one mile out of Hutto, staying there with them until between 4 and 5 a. m., and had sexual intercourse with them, then took them back to Hutto to catch said early train to Austin. He swore that

he and Goodwin swapped girls and indulged with both of them that night. It seems each girl was paid $10 on that occasion.

Said J. P. Hutto testified that about March 1st appellant and another girl met him and said Farley at Hutto just as Farley had testified; that they took them into the freight depot and stayed with them from 11 o'clock at night until between 4 and 5 o'clock the next morning and had sexual intercourse with them; that he had appellant and Farley had the other girl that night; that each paid their respective girls $10.

Mr. R. H. Holman testified that he went to that early train on that morning to come to Austin; that at the time he saw appellant and said other girl in the depot waiting for the train. He and said witnesses, Hutto and Farley, swore positively that it was appellant at Hutto at said time and that they could not be mistaken as to her identity.

Appellant herself testified and denied all the State's incriminating testimony. She testified, among other things, that she had not had illicit intercourse with any man since she promised to live right, which was about two years before the time she was testifying, and that Mr. Kennedy had asked her to give up her position with said certain man in Austin and live right. She also denied that said man had been staying with her since she quit him and promised to live right; and that while this man came to her house on one occasion to induce her to return to him she told him he could kill her before she would go back and live the life she had lived.

All authorities hold that illicit sexual intercourse can be proven by circumstantial evidence; in fact, that such acts must almost necessarily be proven by circumstances. In 4 Elliott on Ev., sec. 2790, it is said: "But few persons are so depraved and so hardened to all sense of shame that they commit the offense (illicit sexual intercourse) except in the most secret and clandestine manner." And further quoting from an English case in the same section it is said: "In every case almost the fact (sexual intercourse) is inferred from circumstances that lead to it by fair inference as a necessary conclusion." Again, in sec. 2792, quoting from an Indiana case, it is said: "From the nature of the case it will rarely happen that direct and positive evidence of acts of illicit intercourse can be obtained. Accordingly, the unlawful and lascivious commerce may be inferred from circumstances proven, which raise such a presumption of guilt as leaves no reasonable doubt, in that regard, in the minds of the jury." A large number of cases from many of the States are cited in support of this doctrine.

In Springer v. State, 16 Texas Crim. App., 591, this court said: "To be a common prostitute her (the woman's) lewdness must be more general and indiscriminate than to have illicit intercourse with one man only." This is quoted and approved in Ramey v. State, 39 Texas Crim. Rep., 200.

In 32 Cyc., 731, as to what is prostitution, or a common prostitute, it is said: "It is the practice of a female offering her body to an in-

discriminate intercourse with men as distinguished from sexual intercourse confined to one man."

In State v. Thuman, 59 Wash., 689, it is held that a woman who submits herself to indiscriminate sexual intercourse without hire is as much a common prostitute as one who does so solely for hire.

In State v. Rice, 59 Iowa, 431, it is held that whether or not a woman is a common prostitute is a question of fact which does not alone depend upon the number of persons with whom she has illicit intercourse; and a jury may consider her general conduct and other circumstances tending to show whether or not she so holds herself out to the public. And in that case, and also in State v. Clark, 78 Iowa, 492, it was held that prostitution does not alone consist in sexual commerce for gain.

There can be no doubt but from the evidence herein the jury were clearly authorized, if not required, to believe that appellant had sexual intercourse at the time the witness Hill took her and another girl and two strange men from the Avenue Hotel, carried them to a secluded place across and up the river as detailed by him. Also that she had sexual intercourse with a strange drummer whom Sullivan took with her into the country on the occasion testified to by him; and also that she had intercourse with the other strange men taken out with her by Sullivan a week later. Nor that she frequently had sexual intercourse at her house with Edgar Martin as testified by Thompson. And the inference is strong that the object of visits of the other strange men to her during this time was for the purpose of the indulgence with her of sexual intercourse as testified by Thompson. In addition, the testimony by Farley and Hutto was sufficient, without doubt, to establish that she had sexual intercourse with these two parties and Goodwin on the two occasions she went from Austin to Hutto at night as testified by Farley and Hutto. It is also reasonably certain from her own testimony that before these several acts by her she had been living the life of a prostitute.

So that there can be no sort of doubt but that the evidence was amply sufficient to sustain her conviction.

Appellant contends that this prosecution cannot be maintained, in substance, because the proof does not show that she was a common prostitute on the very day the indictment was preferred, June 20, 1917, her contention being, in effect, that while she may have been a common prostitute for some time before the very day on which the indictment was preferred, that she had reformed before that day and hence could not be convicted unless she was shown to have been a prostitute on the very day the indictment was preferred. To support this contention, she cites only the City of San Antonio v. The Salvation Army, 127 S. W. Rep., 860, and a note in 137 Am. St. Rep., 949. Neither of these authorities are in point or sustain her contention. The San Antonio case showed that the City of San Antonio, by ordinances and action of its officers, undertook to prevent the Salvation Army from building on its own property a house to be used for the reclamation and reformation

of common prostitutes who had abandoned their lives of prostitution. The house to be built and used by the Salvation Army was in no sense to be used as a house of prostitution or to maintain prostitutes in that kind of life; but the very reverse of that was true. After diligent search no authority has been found which holds that in order to maintain a prosecution for vagrancy it was necessary to allege and prove that the party charged with vagrancy was a vagrant at the very time of the beginning of the prosecution. On the contrary, all authorities hold that such a charge must necessarily be sustained by proof of the previous acts and conduct of the party charged.

In 22 Ency. of P. & P., 510, in treating of indictments and informations for vagrancy it is said: "The general rules as to indictments, informations and complaints are fully applicable in cases of vagrancy." These general rules and our statutory provisions uniformly require that a person charged with a crime must necessarily be charged therewith on some date prior to the filing of the indictment or information, within the period of limitation. In this instance, as shown, the indictment alleged that appellant "on or about October 15, 1916, and thence continuously up to May 1, 1917, was a common prostitute and vagrant and pursued the avocation of a common prostitute during said time." Prosecutions for all offenses must necessarily be of past occurrences. They can never be for occurrences that it is alleged will be committed in futuro; and it would be practically impossible to convict one of an offense eo instanti with the filing of an indictment or information.

In Com. v. Lord, 147 Mass., 399, it was alleged that Lord on January 1, 1886, and thence continuously to June 6, 1887, was an idle person having no visible means of support and living without employment, a vagrant. It was contended in that case that it was necessary for the prosecution to prove that he was guilty of the charge laid on January 1, 1886, and he could not be convicted unless so proved and that the proof that he may have been a vagrant prior to said time could not sustain a conviction. The court expressly held against this contention saying, "It was sufficiently proved that the offense charged was committed during a substantial part of the time named in the complaint. Com. v. Kerrissey, 147 Mass., 110."

In Com. v. Sullivan, 5 Allen (Mass.), 512, the same character of allegation was made. The court said: "The offense charged being of such a character that it has to be proved by a succession of acts and continuation of behavior not limited to any particular time. It is proper to allege it to have been committed on a certain day named, and divers other days between that day and the subsequent day named (Com. v. Ellwell, 1 Gregg, 463." 39 Cyc., p. 1111, and notes. As stated above, after diligent search no authority has been found which would sustain appellant's contention. Doubtless this is because of the fact that such a contention has not before been made so that it was necessary to pass thereon by any court.

Appellant has a number of bills of exceptions showing she objected

to the testimony of said witnesses Sullivan, Thompson, Farley, Hutto and Hill. Under all authorities the testimony of these several witnesses was admissible. The testimony of Farley and Hutto was also objected to because the acts of sexual intercourse shown by appellant with them and Goodwin, as testified to by them, was not admissible because those acts were not committed in Travis County but in the adjoining county of Williamson.

In 4 Elliott on Ev., sec. 2796, it is said: "It must now be regarded as settled law that in such cases prior acts of improper familiarity or of adultery between parties *whether they occurred in the same jurisdiction or not,* and even subsequent acts which tend to show a continued illicit relation between them, may be proved in explanation of, or as characterizing the acts and conduct of the parties complained of as constituting the particular offense." To support this text the following authorities are cited: Crane v. People, 168 Ill., 395, 48 N. E. Rep., 54; Thayer v. Thayer, 101 Mass., 111; Pond v. Pond, 132 Mass., 219; State v. Way, 5 Neb., 283; Commonwealth v. Nichols, 114 Mass., 285; Lawson v. State, 20 Ala., 65; People v. Jenness, 5 Mich., 305; People v. Clark, 33 Mich., 112; People v. Davis, 52 Mich., 569, 18 N. W. Rep., 362; People v. Hendrickson, 53 Mich., 525, 19 N. W., 169; State v. Wallace, 9 N. H., 515; State v. Shoyer, 64 N. J. L., 65, 44 Atl. Rep., 850; State v. Snover, 65 N. J. L., 289, 47 Atl. Rep., 583; State v. Stubbs, 108 N. C., 774, 13 S. E. Rep., 90; State v. Guest, 100 N. C., 410, 6 S. E. Rep., 253; State v. Wheeler, 104 N. C., 893, 10 S. E. Rep., 491; Commonwealth v. Mosier, 135 Pa. St., 221, 19 Atl. Rep., 943; Richardson v. State, 34 Texas, 142; Thayer v. Davis, 38 Vt., 153; State v. Bridgman, 49 Vt., 202; State v. Potter, 52 Vt., 33. In Fundenbury v. State, 23 Texas Crim. App., 395, such evidence was expressly held admissible.

Appellant has a number of bills complaining of brief remarks in different particulars of the county attorney in argument before the jury. She requested no written charge to the jury to disregard any of them. In every instance there was a basis from the evidence or a proper deduction therefrom from which such remarks could be made. The arguments complained of, under the circumstances, show no reversible error.

The court gave one special charge requested by appellant. That, in connection with the court's main charge, fairly and properly submitted every issue raised.

The court did not err in refusing to give this special charge requested by appellant: "Certain evidence has been introduced before you in this case to the effect that the defendant had intercourse with one Hutto in Williamson County, Texas, and with one Farley, in said Williamson County, Texas. I charge you that if you believe from the evidence that the defendant had intercourse with said parties or either of them in Williamson County, Texas, you can not consider such alleged intercourse, if any there was, as proving that the defendant is guilty of

being a common prostitute in Travis County, Texas, and you will not consider such evidence in arriving at your verdict."

Nor did the court err in giving this charge to the jury on that subject: "Certain evidence has been introduced before you to the effect that the defendant had intercourse with one Hutto, in Williamson County, Texas, on or about March 1, 1917, and again with one Farley, in Williamson County, Texas. I charge you that if you believe from the evidence that the defendant had intercourse with said parties, or either of them, in Williamson County, Texas, you can not consider such evidence except as a circumstance going to show, if it does show, whether or not the defendant was pursuing the avocation of a common prostitute in Travis County, Texas, as same is elsewhere explained to you by this court."

No reversible error is presented in this case.

Judgment is affirmed.

*Affirmed.*

### ON REHEARING.

### June 28, 1918.

DAVIDSON, Presiding Judge.—Several interesting questions are presented for consideration on this motion for rehearing. The writer has looked over the matter with some degree of interest, and tried to do so with care and caution, and has reached the conclusion that vagrancy is a present condition or status and not an abandoned condition or status. That a party may have been a vagrant in the past may not bar prosecution for keeping disorderly house, but if she has abandoned such vice, does not justify the prosecution for a present status of vagrancy. The statutes, articles 634 to 640, P. C., with reference to vagrancy, apply, especially with reference to common prostitutes, to a present and existing condition, not an abandoned condition. She may be at present a common prostitute, and has been for the past, continuing up to the present time. This would justify a prosecution for vagrancy, but if she has abandoned that life and is not now a vagrant, she is not subject to be taken up as a vagrant under the law. Such we understand to be a fair and reasonable and proper construction of the statute with reference to common prostitutes. It is not sufficient that she may have been in the past such a character, but that status of being a common prostitute must now exist to justify her arrest and detention. Where she has abandoned such a life and gone out into a different attitude and condition or relation, and is leading a different life, she is not a vagrant. She may be subject to prosecution for having kept a disorderly house, if such was a fact, but this would not justify a charge against her of being a vagrant. The offenses are different, sustained by different definitions of offenses by the Legislature, and necessarily involve different conditions and facts. See arts. 634, 637, P. C.; Pachal v. State, 138 S. W. Rep., 166; City of San Antonio v. Salvation Army,

127 S. W. Rep., 860. The same reasoning would apply to a common gambler or keeper of a gambling house. The party may have kept a gambling establishment and subject to punishment for having done so, but had he abandoned such life and has ceased to carry on the gambling house, and gone out into other and suitable vocations, his condition as a vagrant had ceased. The fact that he kept a gaming house and had abandoned it is a different proposition from being at present a vagrant by reason of such fact. The statute with reference to vagrancy was passed to meet a present and existing condition, an arrest and prosecution of the party under such condition that is now a vagrant. See authorities above cited. The incubus upon society which constitutes vagrancy is a present status, not a past relation or condition. The abandonment of the vagrant's life ceases to make the party a vagrant, and arrest and prosecution for vagrancy is based upon a present status or condition that it does exist. If they are making an honest living or doing such work as relieves them of being a vagrant, the condition of vagrancy no longer exists. That the previous acts were illegal under some other statute might be true, but it does not apply to a present condition of vagrancy. See 20 Cyc., 1090; 22 Cyc., pp. 508-509; 14 Cyc., pp. 1093, 1096.

I am of the opinion, further, that the testimony does not show the accused to be a vagrant in that she was a common prostitute. The two sporadic acts of her going to Williamson County and having intercourse with some man in that county is not sufficient to show her a common prostitute. The fact that she slept with a paramour in Austin to the exclusion of other men would not make her a common prostitute. There is testimony that on two or three occasions she went out at night with male companions, but there is no testimony that she had intercourse with these men on these occasions. We think it would be not sufficient to hold that because she went out with some man at night that this constituted an act of prostitution. She may or may not have had intercourse with these men. The presumption is in her favor that she did not, for the law presumes her innocent. A presumption from these facts would be in her favor. In order to show that these were acts of prostitution there must be something more shown than the mere fact that she went driving with men at night, or absented herself with the men from the vehicle in which they rode. We think it would be carrying the proposition too far to say that because a woman went driving at night with a male friend that, therefore, she was a prostitute. The writer is not willing to assert such proposition or opinion. It is not every woman who indulges in illicit intercourse that is a common prostitute, and under the authorities there is a wide divergence between a prostitute and a common prostitute. Springer v. State, 16 Texas Crim. App.. 591.

The writer, therefore, is of opinion the affirmance should be set aside,

the motion for rehearing granted, and the judgment reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, JUDGE, dissenting.