**Clarence MEAD, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 13–81–190–CR (2193cr).**

Court of Appeals of Texas, Corpus Christi.

May 20, 1982.

Discretionary Review Refused Oct. 6, 1982.

Arthur L. Lapham, Hartman, Lapham, Seerden & Walker, Victoria, for appellant.

Knute Dietze, Criminal Dist. Atty., Victoria, for appellee.

Before NYE, C.J., and YOUNG and GONZALEZ, JJ.

OPINION

NYE, Chief Justice.

This is an appeal from a conviction of murder. After trial by jury, the court assessed punishment at 20 years in the Texas Department of Corrections. The appellant's defense was insanity. The sufficiency of the evidence is not challenged. Appellant Mead appeals.

On June 3, 1980, the appellant, with gun in hand, approached the dispatcher at the Victoria County Sheriff's office. He said, "I just shot a woman." Wayne Kirkendol, an investigator for the Victoria County Sheriff's Department, asked the appellant, "Who are you and who have you shot?" The appellant stated that his name was Clarence Mead, and that he had shot Elizabeth Gant.

The investigator took the appellant to a back office in the Sheriff's Department, then called the Victoria Police Department. Kirkendol later turned the appellant and the gun over to Detective Layne J. Schmidt of the Victoria Police Department, who arrested the appellant.

After receiving the *Miranda* warning, the appellant terminated the questioning, stating that he wanted an attorney. The appellant then made a phone call to his sister, Agnes Avery, and requested his sister to obtain an attorney for him. Prior to consulting with an attorney, the appellant became ill and was transported by ambulance to DeTar Hospital in Victoria, where he was hospitalized and placed under oxygen. Agnes visited the appellant at DeTar on June 4, 1980, and she stated that his conversation at that time did not make sense.

While the appellant was hospitalized on June 4, 1980, prior to consultation with an attorney, and while the appellant was in custody of the Victoria Police Department, the appellant made an oral confession to Patrolman Michael Clayton Uthoff, who was standing guard in the appellant's hospital room. Appellant admitted that he had shot Ms. Dynes.

The appellant was indicted for the murder of Ms. Dynes. The court appointed an attorney for the appellant, and a competency hearing was conducted the third week of June, 1980. The appellant was found incompetent to stand trial and was committed to Rusk State Hospital, where he stayed for 267 days.

On May 14, 1981, a jury found appellant competent to stand trial. Following this hearing, appellant's trial for murder began on May 26, 1981. The appellant raised the defense of insanity. The jury found appellant guilty.

In his first ground of error, appellant contends the trial court erred in admitting into evidence statements made by appellant to Patrolman Uthoff while he was hospitalized and in custody. The complained-of testimony is as follows:

"Mr. Mead stated that on June 3rd he went to Jack's Pawn Shop and bought a .38 caliber revolver. Then he went to Ms. Gant's residence to eat supper that evening, and he stated while he was at Ms. Gant's residence eating supper they got involved in an argument, and Ms. Gant went back to her bedroom to get some photos that she had taken in California recently and stated that she brought the photos back into the room where they were talking, and Mr. Mead said that after observing these photos he went crazy. Mr. Mead said that he pulled out his handgun out of his pants pocket, fired several times at Mrs. Gant, striking her only once, to his knowledge. He became scared, left the residence.

He said after driving around for a little bit, he turned himself into police headquarters.

MR. LAPHAM: I had an objection to all of that Your Honor.

THE COURT: Yes, sir. You have an objection to all of that, but you are overruled."

Officer Uthoff was present in the hospital room when appellant began making his statement. The testimony shows that the statement was initiated by the appellant. After being advised of his *Miranda* rights, the appellant nodded affirmatively to Officer Uthoff's inquiry as to whether he understood his rights. Appellant continued with his statement. Uthoff asked no questions.

Appellant contends the statements were inadmissible under Art. 38.22 Tex.Code Crim.Pro.Ann. (Vernon 1979). This article provides that the limitations of the statute apply only to statements that are the product of custodial interrogation; a voluntary statement is admissible if it is not the "result of" or does not "stem from custodial interrogation." *May v. State*, 618 S.W.2d 333 (Tex.Cr.App.1981).

■ "Custodial interrogation" is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Bailey v. State*, 532 S.W.2d 316 (Tex.Cr.App.1976). The statement made by appellant to the patrolman was not the result of nor did it stem from custodial interrogation. Moreover, we fail to see how this testimony could have harmed appellant since the fact that appel-

lant shot the deceased was not disputed. Appellant's counsel, on two occasions during voir dire, told the jury panel that there was no question that appellant shot and killed the victim. The record also shows that the appellant told his sister and Officer Kirkendol that he had shot the victim. The testimony of appellant's sister and Kirkendol to this fact was admitted without objection. Appellant's first ground of error is overruled.

In his second ground of error, the appellant contends that the trial court erred in allowing the State to present evidence to show why one of its witnesses could not testify.

The record shows that during the voir dire examination of jurors, counsel for the State and appellant both made references to the likelihood of expert witnesses being called to testify on the issue of whether or not the appellant was sane when the fatal shot was fired.

At trial, the defense called Dr. Willery Calhoun who testified that, in his opinion, the appellant was insane at the time of the shooting. On cross-examination, the State's prosecutor asked Dr. Calhoun if he would be surprised to learn that the doctors at Rusk State Hospital felt appellant was sane at the time of the killing. Calhoun responded, "no." Dr. Srinivasan, a doctor at Rusk, was scheduled to testify as a rebuttal witness for the State. On the night before he was to testify, Srinivasan was seriously injured in an automobile accident and did not appear as a witness.

Over appellant's objection, the trial court allowed Jerry Allan Wright, an investigator with the Victoria District Attorney's Office, to testify that the doctor had sustained a skull fracture and broken arm, along with eye and facial injuries, and that Dr. Srinivasan was confined to a hospital as a result of the accident. Appellant contends this testimony caused the jury to speculate about Dr. Srinivasan's testimony, thus unfairly prejudicing the jury against the defendant. We disagree.

 The trial court acted properly. It allowed the State to explain its failure to produce Dr. Srinivasan as a witness in order to escape the adverse inference that the State had no expert testimony relating to the sanity of the appellant and to account for the absence of its material witness. See *Lera v. State,* 165 S.W.2d 92 (Tex.Cr.App. 1942); *Bodde v. State,* 568 S.W.2d 344 (Tex. Cr.App.1978); *Green v. State,* 167 Tex.Cr.R. 272, 320 S.W.2d 818 (1959); *Pickett v. State,* 148 Tex.Cr.R. 577, 189 S.W.2d 741 (1945).

The appellant fails to direct us to any authority in support of his contention that such explanation was in error. The second ground of error is overruled.

The judgment of the trial court is affirmed.