DICK WIMBERLEY v. THE STATE.

No. 7283.    Decided April 4, 1923.

Rehearing denied June 27, 1923.

**1.—Keeping Place for Storing Intoxicating Liquor—Copy of Indictment.**

It was announced in the early cases by this court that inaccuracies in copies of indictment served in cases such as the one now before us, not amounting to any substantial variance, would not affect the correctness of the copy so served. Following Luster v. State, 63 Texas Crim. Rep., 541. Moreover the matter may be disposed of adversely to the defendant, as the count upon which conviction was had fully and completely charged the offense in the copy served and there is no error.

**2.—Same—Indictment—Duplicity.**

The charging of three separate and distinct offenses in the same indictment is not duplicity, which is the charging in one count of more than one offense. Following Todd v. State, 229 S. W. Rep., 515.

**3.—Same—Indictment—Duplicity.**

Where the indictment in the third count charged the keeping of the premises for a forbidden purpose, the acquittal would protect the defendant

for one or all of the purposes expressed, there is no duplicity of pleading; besides the motion to quash was not aimed at any count of the indictment, it is therefore insufficient to reach the third count.

**4.—Same—Examination of Witness—Practice in Trial Court.**

While the antecedents of the witness may be material as affecting his credit, unless same in some legitimate manner, show moral turpitude, we would not be inclined to hold it materially erroneous for the trial court to have ruled as it did, and there must be a discretion allowed the trial courts.

**5.—Same—Evidence—Animus—Motive.**

Before this court would reverse a case for the rejection of evidence supposed to show *animus* or evil motive on the part of the State witness, such evidence must in some way indicate appellant as the object of the dislike or prejudice of the witness testifying.

**6.—Same—Hearsay Evidence.**

Upon trial of keeping unlawfully a place for storing intoxicating liquor, there was no error in ruling out hearsay evidence on the part of the defendant.

**7.—Same—Application for a Continuance.**

One accused of crime may not seek shelter behind the issuance of process in the case of another than his own and claim this diligence, nor can he rely upon the appearance of the witness at his trial who has not been summoned.

**8.—Same—Rehearing—Practice on Appeal.**

Where each of the matters presented upon a motion for rehearing was thoroughly examined when the case was before this court upon original presentation, and as this court still believes was then correctly decided, the motion must be overruled.

Appeal from the District Court of Llano. Tried below before the Honorable J. H. McLean.

Appeal from a conviction of unlawfully keeping intoxicating liquors in a building or place for storing; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*T. H. McGregor* and *A. L. Love,* for appellant.—On question of serving copy of indictment, McDuff v. State, 4 Texas Crim. App., 62.

*R. G. Storey,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Llano County of unlawfully and knowingly keeping and being interested in keeping certain premises, building and place for the purpose of storing, etc., intoxicating liquors capable of producing intoxication, and his punishment fixed at two years in the penitentiary.

Appellant objected to going to trial upon the ground that he had

not been served with a copy of the indictment. One accused of crime in felony cases is entitled to a copy of the indictment, and if in custody he must be served with a copy thereof two days before his trial. Art. 551, Vernon's C. C. P.; Woodall v. State, 25 Texas Crim. App. 617; Sec. 10, Art. 1, Constitution of Texas. Appellant was served with what he claims not to have been a correct copy of said indictment. It appears that the indictment herein contained three counts, each legally sufficient to charge the offense therein set forth. In the copy of said instrument served on appellant the name of the county in which the offense was committed was left out of the first count. It properly appeared in the original. In said copy the name of the county appeared in each of the other two counts. Conviction was had under the third count.

In the early case of Johnson v. State, 4 Texas Crim. App. 268, it was announced that inaccuracies in copies of indictment served in cases such as the one now before us, not amounting to any substantial variance, would not affect the correctness of the copy so served. This was reaffirmed in Luster v. State, 63 Texas Crim. Rep. 541. In our opinion the matter my be disposed of upon the ground that the count upon which conviction was had fully and completely charged the offense. The object of service of a copy of the indictment upon the accused is to apprise him, he being presumed innocent, of the charge against him so that he may have notice in time of what he must prepare to meet and of the exact offense charged. If the entire first count had been bad, or the State had elected not to prosecute thereunder, appellant could not, in our opinion, have refused to go to trial on the third count; nor could he claim lack of definite and complete notice of the offense with which he appears to have been actually charged. It is not necessary for us to pass on purely the academic question of the variance between the copy served, as to the first count, and the indictment itself. That question passed out of the case when appellant was convicted under the third count, which was good. We agree with the learned counsel for appellant in his able brief filed herein, and the legal proposition that a copy of the indictment must be served on the accused when in custody, or furnished him on request when not in custody. Our divergence of opinion with appellant on the question under discussion, however, arises from our conclusion that he was served with a copy of the indictment correct as to every matter that was material to him therein.

Appellant objected to the indictment for duplicity, claiming that it charged three separate and distinct offenses in the same indictment. The charging of three such distinct offenses in three separate counts in one indictment is not duplicity. The authorities are collated by Mr. Vernon under Art. 481 of his Annotated C. C. P., and by Mr. Branch in Sec. 506 of his Annotated P. C. Duplicity is the charging in one count of more than one offense. Todd v. State, 89 Texas

Crim. Rep., 99, 229 S. W. Rep. 515. The practice of charging different offenses in separate counts to meet the evidence as it may be disclosed on the trial has often been commended by this court.

In his brief appellant urges that the third count of the indictment under which conviction was had charged that he unlawfully and knowingly kept and was interested in keeping certain premises, building and place for the purpose of storing, manufacturing, selling, receiving, delivering, bartering and giving away spirituous, vinous and malt liquors capable of producing intoxication, etc.,—was bad for duplicity in that each of the acts mentioned is a separate offense. We do not agree to this contention, but are of opinion that the offense charged in the third count consists of the keeping of the premises for a forbidden purpose, and that a conviction or acquittal resulting from a trial upon an indictment charging as this count does, whether the proof in the first instance supprts a keeping of the premises for one or all of the purposes expressed, that such conviction or acquittal could be plead in bar against an attempted prosecution further for the keeping of said premises for any of said purposes so charged. The statute under which this prosecution was had is akin to those against the keeping of disorderly houses and houses for gaming purposes, indictments for which offenses have been sustained wherein it was charged that the house was kept for more than one, or for all of the purposes named in said statute which served to indicate the character of the house and make out the offense. Tompkins v. State, 4 Texas Crim. App. 161; Schulze v. State, 56 S. W. Rep. 918; Cabiness v. State, 66 Texas Crim. Rep., 409, 146 S. W. Rep. 934; Tellison v. State, 35 Texas Crim. Rep. 388; Morris v. State, 57 Texas Crim. Rep. 163; Polk v. State, 69 Texas Crim. Rep. 53, 152 S. W. Rep. 907. The matter we have just discussed, however, is not properly before us, as appellant's motion to quash for duplicity was not aimed at any count in the indictment, but at the indictment as a whole for charging three distinct offenses in three separate counts.

Complaint is also made of the fact that after asking State witness B. M. Mays how long he had been in and around Llano, and after his answer that he came to Llano from Menard, appellant's counsel further asked witness where he came from to Menard, to which question witness was not allowed a reply, upon the State's objection thereto. The bill reflects the fact that appellant would have shown by said witness that for several years he and his family had no fixed abode but had gone from county to county and from town to town through the west and southwest part of this State; the purpose of such testimony being to impeach the witness and thus affect his credibility. In this connection appellant also complains, for the reasons above set out, that he was not allowed to ask said witness as to how many counties he had lived in during the past ten years. It is not stated in said bill that appellant expected to show that witness had engaged

in criminal pursuits at any time or place, or in those which would show him unworthy of belief. While the antecedents of a witness may be material as affecting his credit, unless same in some legitimate manner show moral turpitude, we would not be inclined to hold it materially erroneous for the trial court to have ruled as in the record before us. There must be a discretion allowed trial courts in such matters, and for us to so rule as to require the lower court to permit appellant to pursue a witness from county to county and from town to town for ten years without stating greater expectation than to show that he worked a few weeks or months at one place and then heard of better times over yonder and went there,—would be to authorize consumption of the time of court and jury without appreciable results.

It is also made to appear from the record that on February 21, 1922, State witness Mays had a fight with Willie Wimberley and John Wimberley. It is set forth in bill of exceptions No. 5 that appellant wanted to ask said witness if he was not at appellant's house on the night preceding said fight and that the wife and father of witness were in another room with John Wimberley, and if the wife of witness did not come to the room where witness was and look in and if he was not trying to get familiar with Ruby Mays, his niece, in said room. This matter was rejected because immaterial. So also as leading up to the same proposition the State's objection to questions to Mrs. B. M. Mays were sustained, as appears in bills of exception Nos. 6 and 9. As we understand this record the complaints of appellant are without merit. Appellant was not at home at the time of the alleged fight or on the night preceding same. No participation of his in any fight or trouble with witness Mays is shown or attempted to be shown. It does appear that Ruby Mays was the daughter of a brother of State witness B. M. Mays and we find in appellant's application for continuance herein a statement that John Mays, the father of Ruby Mays, with his family, left the Llano country at the same time and apparently with said witness B. M. Mays, stating that they would be back. It also appears that the name of John Mays, the father of Ruby Mays, was on the indictment herein as a witness for the State. There is nothing in any of the bills of exception presenting in any substantial form support of the proposition that any evil motive of witness Mays against appellant resulted from the fight referred to. The officers who went to appellant's premises upon report by Mays of appellant's liquor activities, found a still, mash and intoxicating liquor there. Other evidence besides that of said witness Mays affirmatively showed appellant's possession on said premises of quantities of such liquor. Before we would reverse a case for the rejection of evidence supposed to show animus or evil motive on the part of a State witness, such evidence must in some way indicate appellant as the object of the dislike or prejudice

of the witness. That one had had a fight with relatives of the accused against whom such party testified, would not show animus on his part against the party on trial.

In this connection appellant presents by various bills · his objection to testimony which was but hearsay. What Ruby Mays said to parties out of the presence and hearing of B. M. Mays, even if relating to some material matter, would not bind said witness B. M. Mays; nor could his wife be impeached upon a denial by her attempted to be followed by proof that she had stated to others out of the presence of her husband what Ruby Mays had said to her.

Appellant's application for continuance presents no merit. One accused of crime may not seek shelter behind the issuance of process in the case of another than his own and claim this diligence; nor can he rely upon the appearance of witnesses at his trial who have not been summoned and upon whose presence he can show no reasonable ground for reliance.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

ON REHEARING.

June 27, 1923.

LATTIMORE, JUDGE.—In a lengthy and logical motion for rehearing appellant reviews each of the grounds upon which this case was decided adversely to him but without citation of any authorities suggesting a different view from that taken by the court in its original opinion. Each of the matters presented was thoroughly examined when the case was before us upon original presentation and as we still believe, was then correctly decided.

The motion for rehearing will be overruled.

*Overruled.*