R. P. WOODRING V. THE STATE.

*No. 632.   Decided December 6.*

1. **Murder—Change of Venue—Unorganized County—Jurisdiction.**—The homicide was committed in the unorganized county of Kent, which was at that time attached to the county of Scurry for judicial purposes, and was still so attached when the indictment was presented, and the venue changed from Scurry County to the county of Fisher. After the change of venue, Kent County, in which the homicide was committed, became organized, and defendant moved to transfer the case from Fisher to Kent, which was refused. *Held*, no error; the venue having been legally changed to Fisher County, that county legally retained jurisdiction.

2. **Same—Evidence—Homicide in Protection of Property.**—On a trial for murder, if the defense is that the killing was in the protection of property, it is necessary that the evidence must show that deceased was in the very act of making a violent attack upon the property, and must also show that defendant resorted to all other means to prevent the injury before he killed deceased.

3. **Same—Self-Defense.**—On a trial for murder, if the defense be self-defense against a violent attack by deceased upon defendant, and to prevent the infliction of bodily harm which might reasonably result in death, *Held*, that it is not necessary to show that the deceased was in the very act of killing defendant or inflicting great bodily injury upon him, nor that defendant had resorted to all other means to prevent the injury; but if deceased was in the act of killing or inflicting great bodily injury, or had done some act showing that such was evidently his intention, defendant would have the right to act at once and by the most effective means.

4. **Same—Charge.**—See facts stated upon which, on a trial for murder, it is *held*, that the court erred in not charging the jury the law of self-defense as announced above, disconnected from the defense of a killing in protection of property.

APPEAL from the District Court of Fisher.   Tried below before Hon. C. P. WOODRUFF.

Appellant was indicted in the District Court of Scurry for the murder of one Thomas Lowe, in the unorganized county of Kent, on the 23d day of March, 1891, the county of Kent being at the time attached (for judicial purposes) to the county of Scurry. Afterwards, and before the trial, Kent County, where the homicide occurred, became organized. At the trial defendant moved the court to transfer or change the venue from Fisher to Kent County, which was refused by the court, and defendant was tried in Fisher County, the trial resulting in his conviction of murder of the second degree, with the punishment assessed at thirty years' imprisonment in the penitentiary.

It is unnecessary to give the testimony in full. The portion of it bearing upon the questions discussed in the opinion is sufficiently stated therein. Upon the law of self-defense the refused special instructions requested for defendant were as follows:

"1. If the jury believe that the defendant killed Tom Lowe, then in determining whether the defendant acted in self-defense in so killing him, the jury will look at the difficulty from defendant's standpoint, and if from his standpoint he appeared to be in danger of being

killed by Lowe, or suffering great bodily injury at Lowe's hands, then he had a right to kill the said Lowe, and you will find him not guilty.

"2. If the jury believe from the evidence that the defendant began to shoot in self-defense, he had a right to continue to shoot Lowe until all appearance of danger was gone.

"7. The jury are charged that, should they believe from the evidence that neither defendant nor the deceased had possession of the fence in question, and both parties met there, each having a right to go there, and that deceased, unprovoked by defendant, made a violent attack upon defendant with a hatchet, and by reason of said attack it reasonably appeared to defendant, viewed from his standpoint, that he was in danger of death or serious bodily injury, and so believing he shot and killed deceased Lowe, then he would not be guilty of any offense, and if you have a reasonable doubt of this point you will acquit defendant."

*C. R. Breedlove, Thurmond & Yantis*, and *J. T. Cunningham*, for appellant.—The District Court of Fisher County has no jurisdiction of this cause, and none to try it. The motion to change this cause to Kent County should have been granted for the reasons stated in said motion. The offense alleged to have been committed is alleged to have been done in Kent County while Kent County was attached to Scurry County for judicial purposes, and that long before this cause was called for trial, nearly a year ago, said Kent County organized, and its autonomy is complete, and was so at the last general election, which was judicially known to the trial court in this cause as shown by the defendant's bill of exceptions number one. That said cause herein was transferred or the venue was changed from Scurry County by the court upon his own motion to Fisher County, Texas. After that time Kent County organized and completed its autonomy. Then the said Fisher County District Court lost jurisdiction over this cause to try it in the said county, and the court's duty was to transfer it to Kent County, and to do that whether defendant requested it or not; but defendant, by motion, requested it and took a bill of exceptions to the overruling of the motion, but did not raise the question again in the motion for a new trial, because it, being a jurisdictional question, can be raised at any time and in any court to which it goes, or to any court that has proper jurisdiction. Mr. Bishop, in his eminent authorities, says by common law crimes are local, to be prosecuted in the county of their commission; only in such county can the grand jury inquire of them. Even when a county is divided, a criminal act done before the division is to be prosecuted in the particular new county in which is the place of the offense. The offense is against the State; the trial in the new county. 7 Bish. Crim. Proc., sec. 747; Nelson v. The State, 1 Texas Crim. App., 41; Weller v. The State, 16

Texas Crim. App., 206; Hernandez v. The State, 19 Texas Crim. App., 408. From the above authorities this cause, after Kent County organized, should have been transferred to the District Court of that county for trial, because the District Court of Fisher County had lost its jurisdiction of the case in the organization of Kent County.

The court refused to give defendant's special instruction to the court's refusing said charge. The law in this special charge should have been given to the jury as a part of the law of the case, because if neither deceased nor defendant had possession, and they met there, each having a right to go there, and the deceased, unprovoked by defendant, made a violent assault upon defendant with a hatchet, and by reason of said attack it reasonably appeared to defendant, viewed from his standpoint, that he was in danger of death or serious bodily harm, and so believing he shot and killed deceased, then he was and is not guilty of any offense. We can not see for our life how or why the court refused this charge. It was the law, and covers the facts of the case. The court failed to give the jury any kind of instructions upon this theory of the case, and it does seem that he did not understand the law of the case, for if he did he is inexcusable for failing to apply the law to this case as made by the facts introduced in this case. Lilly v. The State, 20 Texas Crim. App., 1; Ledbetter v. The State, 26 Texas Crim. App., 34; Weaver v. The State, 19 Texas Crim. App., 547; Souther v. The State, 18 Texas Crim. App., 352.

*R. L. Henry*, Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—Appellant was convicted for the murder of Thomas Lowe, the verdict and judgment being for murder of the second degree, with confinement in the penitentiary for thirty years. We deem it necessary to notice but two matters.

1. The homicide occurred in the unorganized county of Kent, which was at the time of the homicide attached to Scurry. The case was sent to Fisher County on change of venue. When the venue was changed to Fisher County, Kent County was still unorganized. In the District Court of Fisher, appellant, in writing, moved the court to send the cause to Kent County, it being then organized. The motion was refused, and appellant reserved his bill of exception. In this there was no error. The case being legally sent to Fisher County by change of venue, it belonged to that county just as if the homicide had occurred there and the bill of indictment had been originally presented into the District Court of Fisher County. The cases cited by appellant are not in point.

2. There are two theories urged below in support of self-defense: (1) That the appellant killed deceased in the protection of his property, or property in his possession. The court instructed the jury

upon this theory of the case.     (2) That, independent of this phase of the case, appellant was justified, because deceased was making an assault and battery upon him with a hatchet, which endangered his life, or which threatened him with great bodily injury.     If appellant relies upon the first theory, he must show, or the evidence must show, that he killed while the deceased was in the very act of making the violent attack on his property, and he must also show that he resorted to all other means to prevent the injury.     These rules were given in charge to the jury.     On the other hand, if he killed deceased to prevent murder, or to prevent receiving from deceased great bodily harm which might reasonably result in his death, he would not be required to kill while the deceased was in the very act of killing him, or was in the very act of inflicting great bodily injury upon him; nor would he be required to resort to all other means to prevent murder or the great bodily injury; for if deceased was in the act of killing defendant or inflicting upon him great bodily injury, or had done some act showing evidently an intent to commit such an offense, the accused could act at once, and with the most effective means.     Is this theory presented by evidence with sufficient cogency to require a charge thereon?     For the court instructed only upon the first ground—namely, homicide in protection of property.

Cockrill states:     "The first I saw of Lowe, he came riding up the string of fence, and was in about forty or fifty yards of us, when he dismounted and began to take down the fence.     I lived with and worked for R. P. Woodring.     We lived about one-half mile from Thomas Lowe.     When I saw him coming I did not know him, and asked Woodring who he was.     He said it was Mr. Lowe.     I then asked where he supposed Lowe was going, and he said he reckoned he (Lowe) was just riding around.     Lowe commenced cutting the fence, and Woodring picked up his tamping pole—which was about six feet long, and was a heavy pole he had been using to pack the dirt around the posts we were setting in the ground; it was about two inches in diameter—started to him, and I told Woodring not to have any trouble with the old gentleman, and he said, 'I am not going to; but, God damn him, he can't cut my fence unless he cuts it by law.'     Woodring got close to Lowe.     He said: 'Mr. Lowe, don't you cut my fence.'     Lowe replied, 'You go away from here, Pat Woodring; God damn you, I'll kill you.'     Lowe said, 'We came here to cut this fence, and I am going to cut it,' and he made for his gun.     Lowe's daughter put her left hand on the gun scabbard and her right hand on the saddle pockets, and when Lowe grabbed for his gun, Woodring said, 'Mr. Lowe, don't you get that gun.'     Lowe saw that Woodring was going to get to him before he could get his gun, and he wheeled on Woodring, with his hatchet in his left hand, and struck defendant on the side of his head with it.     Woodring then drew his pistol on him,

and told him to stop, and Lowe 'sorter kind of checked up a little,' and the young lady screamed out, 'Mr. Woodring, don't shoot my pa.' Woodring then took his pistol off of Lowe, and casts his (defendant's) eyes down on it, and then Lowe jumped at defendant and grabbed him by the left arm with his right hand, and struck Woodring over the head with the hatchet two or three times, knocked his hat off, and staggered him backwards. Woodring then drew his pistol upon him again, and told him to stand back. Lowe ran defendant back ten or fifteen feet, shoving him, and striking at him with the hatchet. Then Woodring commenced shooting, and shot twice before he got Lowe loose from him. After the second shot, defendant shoved Lowe loose, and Lowe had his right side to defendant when defendant shot the third shot. Lowe then wheeled as if to come back and strike, when the hatchet flew out of his hand. The hatchet left his (Lowe's) hand about the time defendant fired the fourth shot, and Lowe fell, with his head up hill, on his face, and doubled up. After that I told Woodring not to shoot any more, and he said, 'I am not going to.' Then defendant asked me to go with him to his home. He said he wanted to get his horse, and tell the neighbors what he had done, so that they could come and take care of Lowe."

Miss Annie Knutson, a witness for defendant, being sworn, testified as follows: "I was at home in Kent County on March 23, 1891, when Mr. Tom Lowe was killed by R. P. Woodring. The killing occurred about seventy-five yards from our dugout. I saw Mr. Lowe when he struck Mr. Woodring. I could tell from where I was what he struck him with; it was a hatchet. I know he struck once, and I saw Lowe strike at him two or three times more. He had struck at him twice when Woodring began shooting. I saw Wes Cockrill and Minnie Lowe there. Minnie ran when the first shot was fired. I saw Mr. McLane there on a dun horse. My ma was at home, and saw part of the difficulty. She is now here attending court in this case."

These witnesses do not agree in every particular, but their testimony most clearly presents a case which, if believed by the jury, would justify or at least reduce the killing to manslaughter. There was introduced in evidence a great deal of testimony bearing upon the title to the fence, some of which supported the claim of appellant, and some was against his claim. The jury might not have believed his claim genuine, or that it was made in good faith; and if the jury decided that his claim was not good, or not made in good faith, his first ground of self-defense evidently failed. Hence, the imperative necessity of instructing the jury upon self-defense, disconnected with the fence question altogether; wherefore the judgment is reversed, and the cause is remanded.

*Reversed and remanded.*

Judges all present and concurring.