## HENRY PATTERSON v. THE STATE.

### No. 3161. Decided April 25, 1906.

**1.—Murder in Second Degree—Evidence—Dying Declaration—Predicate.**

Upon a trial for murder where the evidence showed that the deceased stated, "I am killed; I am dying now," there was a sufficient indication of his consciousness of approaching death when he made the statement, and a sufficient predicate for the introduction of his testimony as to the manner in which defendant committed the homicide.

**2.—Same—Refused Charge—Self-Defense—Force Used in Protecting Property.**

Upon a trial for murder where the evidence showed that the deceased had kicked in or was kicking in the door—or was about to do so—of a house in which defendant was an employee, and that the latter shoved the former off, the gallery onto the sidewalk, and that the firing then ensued in which deceased was killed; and the court in his charge, under article 677, Penal Code, instructed the jury that to justify a homicide in the protection of property the killing should take place when the person killed is in the very act of making an unlawful and violent attack, etc., and also gave a charge on self-defense, there was no error in refusing the defendant's requested charge, grouping together the facts constituting his self-defense. The jury evidently believed that defendant used more force than was reasonably necessary for his self-defense or the protection of property, this question being left to their discretion by the court's charge.

Appeal from the District Court of Cooke. Tried below before Hon. D. E. Barrett.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary.

The charge of the court on the protection of property is as follows: "If you find that defendant killed said Hodgkinson, yet if you further find that when he killed him, said Hodgkinson was in the very act of making an unlawful and violent attack upon the habitation of Alice Sharp, then the defendant had the right to repel such attack by using all such force as to him, from his standpoint, seemed reasonably necessary to repel such attack, and if he used no greater force than to him seemed reasonably necessary to repel such attack, then he would be justified in such killing and you will find him not guilty; but such attack by Hodgkinson if any he made, upon the habitation of Alice Sharp would not justify the defendant in killing said H. unless you find from the evidence that he did the killing while H. was in the very act of making such attack upon said habitation."

The opinion states the case.

*Culp & Giddings,* for appellant.

*J. E. Yantis,* Assistant Attorney-General; *Thomas & Rogers,* and *Stuart & Bell,* for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at fifteen years confinement in the penitentiary; hence this appeal.

A summary of the testimony shows that Henry Patterson was an employee in a certain house of prostitution run by Alice Sharp, in the town of Gainesville; and that deceased, Less Hodgkinson, was or had been a deputy sheriff in said town. On the night in question he, with others, was at said house, and evidently had been drinking. According to some of the witnesses' testimony they were noisy and boisterous. Alice Sharp desired them to leave the house, stating that she was sleepy and wanted to close up. They went out of the room onto the gallery. Deceased said he wanted some more beer and hesitated about leaving, she insisting on his going and told him she would not sell him any more beer; and according to some of the testimony he kicked at the door and demanded admittance. Appellant came up and pushed him off the gallery onto the pavement. At this juncture, according to the State's testimony, appellant fired at deceased who fell onto the pavement, and then drew his pistol, and without rising again fired at appellant on the gallery. The testimony shows that several shots were fired by deceased and several by appellant. Deceased received two wounds, one in the shoulder, which was slight, and the other in the stomach, the latter causing his death. He lived from half an hour to an hour after the difficulty. Before he died he made a declaration as to the cause of the death. This is a sufficient statement of the difficulty to discuss the questions raised.

Appellant complains of the action of the court admitting the testimony of Moss as to the alleged dying declarations made to him by deceased, insisting that no sufficient predicate was laid for the admission of said testimony; that it was not shown that deceased was conscious at the time of approaching death. The bill of exceptions referred to was taken in the statement of facts, and as is usual in such cases, the bill is not taken in that clear and satisfactory manner which would bring in review the questions which appellant discusses in his brief. This bill only shows that appellant objects "because the mere statement, 'I am killed' is not a sufficient predicate. This was overruled and defendant excepts." Now, an examination of the testimony in connection with this matter shows that directly after the shooting the witness Moss came to where deceased was lying on the sidewalk where he had been shot down, and as soon as he approached deceased, he said: "Less, is this you?" Deceased said, "Yes." He then asked, "What is the matter with you?" Deceased said, "I am killed." Witness said, "Maybe not so bad as that, Less." He says, "Yes, I am dying

right now." Then asked him who shot him, and he said, Patterson. Witness then said, "Did you shoot at him?" He said, "Yes, I shot two or three times at him." Witness said, "Did you hit him," and he said, "I do not know." Witness then narrates that he saw a six shooter lying there and picked it up, and it looked like deceased had dropped it out of his hand. He asked him, "What did it all start about?" Deceased said, "I don't know, I was standing on the corner of that gallery and he came up on the far end of the gallery and shoved me off, and shot me." Witness asked, "Did you shoot first or him?" He said, "He did.'" Deceased died about an hour after this. There is no question in our minds but that the predicate was sufficiently laid for the introduction of this testimony. Sims v. State, 36 Texas Crim. App., 154; King v. State, 34 Texas Crim. App., 228; Connell v. State, 10 Texas Ct. Rep., 890. Under the authorities, we understand that the statement by deceased, "I am killed; I am dying now," is a sufficient indication of his consciousness of approaching death when he made the statement. We would further observe that, so far as we are able to discover from the testimony in this connection, deceased was in a sound condition of mind when he made the declarations, and there is no indication that said declaration was made in response to any questions calculated to elicit the particular statement. Futhermore, the statement of facts in this connection does not negative the idea, but rather suggests that it might be regarded as res gestæ.

Appellant complains of the refusal of the court to give his special requested charge number 2, on the ground that the court should have grouped the facts constituting his self-defense as suggested by the testimony; and not having done so his second requested instruction, which grouped the facts, should have been given. We think that the court's charge in paragraph 16 sufficiently covered all that was essential to protect appellant's right of self-defense, that is, to slay deceased if it appeared from his standpoint to become necessary to repel an attack then being made by deceased on the habitation of Alice Sharp. Article 677, Penal Code, requires, in order to justify a homicide in the protection of property, that the killing should take place when the person killed is in the very act of making such unlawful and violent attack. We understand that the charge given by the court followed the statute in this regard. Appellant's own testimony shows that the homicide occurred at the time deceased was trying to kick in the door of the room. But whether he was then kicking in the door, or attempting to kick in the door, or had just kicked the door in, when he was shoved off the gallery onto the sidewalk, it does not occur to us would matter, or that the jury would be at all misled or confused by the charge. The circumstances all show that the incidents were so close together, that is, the facts relating to deceased kicking the door and his being shoved off, and the firing immediately ensuing, under the court's charge which followed the statute, that the jury would give appellant the full benefit of the law as applied to the facts in

that respect. However, if they believed, as evidently they did, that appellant used more force than was reasonably necessary under the circumstances, that he not only rightly ejected deceased from the gallery, but immediately began firing on him before it was necessary for his self-defense, then they would, as they evidently did, disregard his defense of property. Appellant's requested charge number 2, requires, as does the court's charge, that appellant must have been in the act of making an assault upon the house of Alice Sharp, and that it reasonably appeared necessary from defendant's standpoint that it was the intention of the deceased to force an entrance against her will, in such event appellant had the right to use all force necessary to prevent such unlawful attack, and would be justified, if he used no more force and slew deceased. This charge in all essential particulars is much like the court's charge; and both, as stated, required deceased to be in the act of making said assault on the property or house of Alice Sharp. It was not necessary for the court to especially direct the attention of the jury to the fact that appellant had the same right to protect said house or property as Alice Sharp had, being in her employ. In the charges given by the court this right was assumed to exist in appellant as her employee.

We do not believe that the court was required or was even authorized to tell the jury that appellant was authorized to push deceased off of the gallery. That may have been the use of more force than was necessary at that time. That matter was properly left within the jury's discretion. There is nothing in the charge of the court that we see at variance with opinion of this court in Weaver v. State, 19 Texas Crim. App., 547. There it is laid down that the danger from an attack on one's property must be immediate and imminent; and that every means must be resorted to to prevent the injury or violence attempted. That in no case of felony or attempted felony is it lawful to take life where the party may be arrested, and felony thereby prevented. In this case, it occurs to us that so far as the protection of property was concerned, the charge given was all that could be asked for by appellant; and the jury evidently believed, as to that matter, that appellant acted precipitately or used more force than was reasonably necessary for the protection of property. We do not understand that the facts here show any real danger to property. The real crucial point in the case was appellant's right of self-defense. We understand the court's charge on that subject adequately safeguarded appellant. The jury were instructed in paragraph 16 of the court's charge that if they believed that defendant shot and killed deceased, but at the time he did so deceased was making or about to make an unlawful and violent attack upon defendant, calculated to cause him to believe that deceased was about to inflict upon him serious bodily injury or kill him, as viewed from his standpoint, that appellant would have the right to slay deceased. We understand that when a difficulty is about to ensue between two men armed, that it is sometimes a very nice point to determine

who is the aggressor, and who first resorts to force. Here the question we think was fairly left to the consideration of the jury, and they evidently believed that appellant not only took the initiative and shoved deceased off of the gallery, when perhaps there was no occasion for this character of force at the time, but that he immediately drew his pistol, and shot him; and before deceased had made any attack on appellant. This matter was left to the consideration of the jury. Under the charge the jury were authorized to acquit appellant if deceased, before appellant drew and shot was making or about to make an unlawful attack on defendant which caused him to believe his life or person was in danger, and this regardless of appellant's right in the first instance to push him off the gallery onto the sidewalk.

We find no error in the record such as authorizes a reversal, and the judgment is affirmed.

*Affirmed.*

[Motion for rehearing overruled without written opinion.—Reporter.]