### JOHN D. HOLLAND, JR. V. THE STATE.

No. 15679. Delivered March 22, 1933.
Rehearing Denied June 23, 1933.
Reported in 61 S. W. (2d) 838.

The opinion states the case.

*Hiram G. Brown,* of Mt. Pleasant, and *F. B. Caudle* and *R. T. Wilkinson, Jr.,* both of Mt. Vernon, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, four years in the penitentiary.

This is the second appeal; the former opinion being in 118 Texas Crim. Rep., 439.

Deceased and his son were in the hamburger stand of appellant. Both were drinking; the son apparently being quite drunk.

Said son vomited on the floor. Appellant took him outside. The manner of ejection was told by conflicting witnesses. Deceased also went out of the house. According to several witnesses he cursed appellant and used a vile epithet concerning him. What then occurred is also stated differently by witnesses for the state and defendant, but it is without dispute that appellant then cut deceased with a butcher knife having a blade about nine inches in length. A state witness, standing near, said appellant stuck the knife into the stomach of deceased up to the handle. The entrails of the deceased came through the opening. The witness testified that appellant told him to let deceased alone; that he was not the first man whose guts had been cut out. The cutting was Sunday afternoon. Death ensued Monday afternoon. Just prior to death deceased vomited a great deal of blood.

There are many bills of exception, but in his brief appellant submits only those deemed by him of merit, and we forego discussion of the others.

We do not think it reversible error for the trial court to not define the word "voluntarily," especially in view of the language of the charge several times repeated, which told the jury to find appellant guilty of murder only if they believed beyond a reasonable doubt that, with intent to kill, he cut deceased with a knife and did then thereby kill him. In paragraph fourteen of the charge, the jury were told that, before they could convict, they must believe from the evidence beyond a reasonable doubt that appellant attacked deceased with a deadly weapon, with the specific intent to kill him. In paragraph sixteen they were told that, if they had a reasonable doubt as to whether appellant had a specific intent to kill deceased, they should acquit. Nor do we find facts in this record supporting appellant's complaint of the charge for its failure to submit the theory of his right of self-defense against a joint attack by deceased and his son, at the time of the homicide. Of the number of eye-witnesses who testified both for the state and the defense, none indicated any hostile act of the son of deceased prior to the cutting. As stated above, he seems to have been very drunk. The language of deceased, coupled with the vile epithet mentioned, which a state witness said in substance seemed to enrage appellant, was "We'll string you up," but this could hardly be held to justify any belief on appellant's part that the boy of deceased was about to attack him. Appellant testified: "Yes, sir, I was afraid of him (deceased) at that time. I was afraid he would do what he said he would do. That was "String me up." "Yes, sir, I

believed at that time that he was about to make an attack on me." Later appellant testified as follows: "He told me that if I would lay that knife down he would string me up. He said he would string me up." At no time did appellant testify to any belief or fear of his that the boy was going to attack him, nor did he testify to any act or motion on the part of said boy so indicating. We do not believe the facts called for the charge mentioned.

We believe that the charge of the court fairly gave appellant every right of self-defense available under the facts. Many witnesses said deceased had the reputation of being a dangerous and violent man, and one who would execute threats made by him. Appellant swore, and was supported by other witnesses, that just before the cutting deceased turned, started rolling up his sleeves, and said to appellant, coupled with an oath and vile epithet, that, if he would put that knife down, "We will string you up," and made a step toward appellant, whereupon appelland said he made a step toward deceased, hit him with his left hand and with the knife simultaneously. He said that he then believed deceased was about to attack him and to "string him up." He also said that he realized if deceased got hold of him he would do what he said he was going to do. Paragraph 9 of the court's charge is as follows:

"Homicide is justifiable in the protection of a person against any unlawful and violent attack producing a reasonable expectation or fear of death or some serious bodily injury. A party who is unlawfully attacked is not bound to retreat in any event in order to avoid the necessity of killing his assailant. It is not necessary to the right of self-defense that the danger should in fact exist; but if at the time of the homicide the conduct of the deceased, viewed in the light of all the circumstances, from the standpoint of the defendant, was such as to create in the mind of the defendant a reasonable apprehension of death or serious bodily injury, although in fact no such danger existed, his right to kill to prevent the apparent danger would be as complete as if the danger had been real. And the appearance or indications of danger must be viewed from the defendant's standpoint at the time, in the light of all the facts and circumstances surrounding the case, in determining whether or not the conduct of the deceased was calculated to produce, and did produce in the mind of the defendant the fear of death or serious bodily injury."

The exception to this was that it confined appellant's right of self-defense to an apprehension of an attack by deceased,

which would put appellant in fear of death or some serious bodily injury, while under the facts of this case the court should charge the jury that the accused had the right to defend against any character of attack, and use such force as is necessary to repel it.

We deem it hardly necessary to discuss this proposition in view of the fact that in the charge, which we must view as a whole, and especially in paragraph twenty-one, the court later submitted the law of self-defense generally, and especially as applicable to assault to murder and aggravated assault. The jury were correctly told that appellant had the right to defend against any and all kinds of force and any sort of an attack. In the paragraph of the charge above quoted, the court was submitting self-defense as applicable to a case where one kills, and asserts that he killed, because he believed it necessary from his standpoint at the time to do so in defense against an attack threatening death or serious bodily injury.

This offense was committed in 1930, prior to the enactment of Chapter 61, Acts of 42nd Legislature, regarding assault to murder. The confining of the operation of a given law to violations of same committed subsequent to the date of its passage, as well as the express exemption therefrom of those of prior date, would not be the bringing together in one bill subjects diverse in their nature, with a view of combining in its favor the advocates of all. Breen v. Texas & P. Ry. Co., 44 Texas, 305; Ex parte Mabry, 5 Texas App., 93; Fahey v. State, 27 Texas App., 159; Fielder v. State, 40 Texas Crim. Rep., 186; Ex parte Abrams, 56 Texas Crim. Rep., 467; Ex parte Hernan, 45 Texas Crim. Rep., 343.

Some claim was advanced by appellant that the death of deceased was due to or affected by his having taken intoxicating liquor after his injury, and an exception was taken to the court's charge submitting the issue. We find little testimony supporting the conclusion that death was caused by any other thing than the knife wound, save opinions expressed by one of the doctors who testified that when he came to the room where appellant was in the hospital the morning after the injury, he detected the odor of home-brew, and suspected and testified that in his opinion deceased did not die from the cut alone; that he did not think he would have died so quick if he had had nothing to drink. Deceased was unquestionably drunk on beer when stabbed. Just how long this odor would remain on a man's breath is not in evidence. Seemingly all parties who were with deceased after he was taken to the hospital, testified, and each

denied having given him any liquor of any kind. The trial court told the jury in paragraph ten of his charge that if they believed, or had a reasonable doubt, that the injury might not under other circumstances have been fatal,—and they believed or had a reasonable doubt thereof that after his injury any intoxicating liquor was drunk by deceased, and that such drinking caused, or aided the original injury to cause, the death of deceased, and that death would not probably have resulted but for such drinking, if any, then appellant would not be guilty of murder. We think this a fair presentation of appellant's claim in this regard. In no way, save that based on the testimony of said doctor, was death from any other cause than the wound inflicted suggested or supported. The charge related itself to the particular cause, if any, as aiding or causing death aside from that of the wound, which was in terms referred to and relied on by the witness for the defense.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

## ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, JUDGE.—Appellant renews his contention that he was entitled to a charge under the provisions of article 1224, P. C., relating to the right to defend against any unlawful and violent attack. Appellant testified that he was standing near deceased with a knife in his hand. He said deceased cursed him and told him that, if he would put the knife down, he would string him up. He said, further, that, when deceased made this statement, he took a step toward him (appellant) and that he made one step toward deceased and hit him with his left hand, and at the same time stabbed him with the knife. He testified that he believed that deceased was about to make an attack on him, as he had taken a couple of steps toward him. No witness appears to have testified that deceased struck appellant. It does not appear that deceased was armed. Some of the appellant's witnesses testified that, when deceased cursed appellant, appellant immediately struck deceased and stabbed him with the knife. Under the circumstances, the refusal of the charge appellant sought would not call for a reversal. In a homicide case, in order to warrant a charge under the provisions of article 1224, P. C., the attack must be of a violent character. Bryant v. State, 100 S. W., 371. There was no testimony to the effect that deceased was making a violent attack on appellant. We quote from Bryant v. State, supra, as follows:

"Article 667, P. C. (now article 1224) authorizes self-defense as against a nonfelonious assault, and that is where the attack is of a violent character, and in such case self-defense is only allowable while the person killed is in the very act of making such unlawful and violent attack. As we understand by this, it does not authorize a killing when the party is about to attack, or is doing some act preparatory to the attack, but he must be then making such unlawful and violent attack."

Notwithstanding the attack may be violent, before the accused is warranted in killing his assailant, he must first resort to all other available and reasonable means of protection, save retreat. Andrews v. State, 275 S. W., 1024. Believing the evidence insufficient to raise the issue of a violent attack, we are constrained to overrule appellant's contention.

We find no evidence in the record raising the issue of a joint attack by deceased and his son at the time of the homicide. Hence a charge covering the subject was not required.

Appellant contends that the charge on murder without malice was inadequate. We deem the charge sufficient. We quote: "You are further instructed in connection with the term malice aforethought and murder without malice aforethought, that murder without malice is a voluntary homicide committed without justification or excuse under the immediate influence of a sudden passion arising from an adequate cause, by which it is meant such cause as would commonly produce a degree of anger, rage, resentment or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection. If you believe from the evidence beyond a reasonable doubt that the defendant did at the time and place charged unlawfully kill Hiram Carpenter, but you do not believe from the evidence beyond a reasonable doubt that he was actuated by malice aforethought, then you cannot convict him of any higher grade of offense than murder without malice, and in determining whether or not the defendant acted with malice aforethought you will take into consideration all the facts and circumstances surrounding the killing, if any, and if you believe or have a reasonable doubt that the killing occurred under the immediate influence of sudden passion arising from an adequate cause, by which it is meant such cause as would commonly produce a degree of anger, rage, resentment or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection, then the punishment assessed cannot be for a greater period than five years confinement in the state penitentiary."

Since the repeal of the statutes defining manslaughter, the

court is not required to define the term "adequate cause" other than as same is defined in Chapter 60, Acts 42nd Legislature, Regular Session. In said chapter it is declared, in substance, that by the term "adequate cause" is meant such cause as would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection. In the charge above quoted the court gave the definition embraced in the statute, as well as the definition of murder without malice, and made a sufficient application of the law to the facts.

A careful examination of appellant's contentions leads us to the conclusion that our original disposition of the appeal was correct.

The motion for rehearing is overruled.

*Overruled.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.