## APOLONIO GAMEZ V. THE STATE.

No. 19059.   Delivered June 23, 1937.
Rehearing Denied January 19, 1938.

The opinion states the case.

*Leonard Brown,* of San Antonio, *Phillip Montalbo,* of Mexico City, Mexico, and *Archie S. Brown, Jr.,* and *Maxwell Burkett,* both of San Antonio, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for forty years.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Nieves Rangel by shooting him with a pistol.

The homicide occurred at a dance in the town of Selma. Deceased was present for the purpose of aiding in keeping order. According to the version of the State, Roberto Gamez, a brother of appellant, engaged in a quarrel with others, and deceased, in an effort to prevent a fight, grasped him by the shoulder. At this juncture appellant shot deceased in the eye. Deceased then pulled his pistol but it dropped to the floor. Juan Gamez, appellant's brother, seized the pistol and shot deceased twice. Appellant testified that deceased struck his brother Roberto on the head with a pistol and knocked him down; that deceased then pointed the pistol at Roberto; that he (appellant) approached and deceased pointed his pistol at him; that he fired two shots at deceased in order to protect his brother and himself.

Approximately a year prior to the homicide deceased had filed a complaint against appellant, charging him with an aggravated assault on him; and appellant had been convicted of a simple assault. It was the State's theory that from the date of his conviction for this assault appellant entertained ill-will toward the deceased.

We deem the foregoing a sufficient statement of the evidence.

Bill of exception No. 1 is concerned with appellant's first application for a continuance, same being based on the absence of Jose Angel Martinez, who was in the State of Oregon at the time the case was called for trial. It was averred that, if present, the witness would testify that on the occasion of the homicide he was present and saw the deceased grab Roberto Gamez by the arm and "hit him over the head with a pistol, causing him to fall to the floor." Further, it was alleged that the witness would testify that appellant came up and fired two shots at deceased. In short, the testimony of the witness would support appellant's theory that he acted in defense of his brother. As an excuse for the belated issuance of process for the witness it was alleged in the motion as follows:

"That on or about the 29th day of October, A. D. 1936, it was found that one Jose Angel Martinez had been telling several people that he had seen the difficulty and had seen Nieves Rangel jerk Roberto Gamez by the arm and strike him with a pistol, felling him to the floor, and that then Apolonio Gamez fired two shots at deceased. That the attorneys for the defendant were also informed that Jose Angel Martinez had been told by his mother that he could not testify on the trial of any case. That the mother of the said Jose Angel Martinez was talked to

on the 29th of October, A. D. 1936, and consented that the witness Jose Angel Martinez testify as to what he had seen and heard on the occasion of the homicide. That at the time the mother of the said Jose Angel Martinez consented that he testify, the said Jose Angel Martinez was not at home and he could not be communicated with on said date. That on or about the second day of November, A. D. 1936, a further effort was made to communicate with the said Jose Angel Martinez to ascertain if he was willing to testify as to what it was reported he had told various people, and he could not be located other than it was ascertained that he had gone to San Antonio to join the tree army. That it was first reported that he had been sent to San Angelo, Texas, but upon further investigation it was found, on the 6th day of November, A. D. 1936, that he had been sent to Medford, Oregon. That immediately upon receiving such information this defendant filed an application for process for the said witness at Medford, Oregon, with the clerk of said court. That there is not sufficient time to procure the attendance of said witness by the ninth day of November, A. D. 1936."

In controverting the application the State showed that appellant was arrested under the indictment on the first day of October, 1936, and his case set for trial on the 19th of October. When the case was called for trial at the appointed time a postponement was granted until the 9th of November. Application was not made for subpoena for the witness until November 7th.

It appears that shortly after his arrest appellant employed counsel, and that, on the 25th of October, 1936, his relatives employed another attorney to assist in his defense. The attorney last employed testified that it was during the week beginning October 26, 1936, that he first learned that the witness Martinez had told various people a few days after the homicide that he was present and had seen the deceased strike Roberto Gamez over the head with a pistol. Upon receiving such information he sent one of counsel for appellant to talk to the mother of the witness, in order to ascertain his whereabouts. It was ascertained from her that the witness was not at home and could not be found. Upon further inquiry being made it was reported that the witness had come to San Antonio for the purpose of joining the tree army. Counsel again endeavored to find the witness but was unable to locate him. On the 5th of November counsel was informed that the tree army had an office in San Antonio. Upon calling said office he ascertained that the witness had been sent to Medford, Oregon.

The attorney who went to the home of the witness' mother testified that he talked to the mother and sister of the witness at their home on the morning of October 29, 1936, and they told him they did not know where the witness was, but that he was to join the tree army. Said attorney then went to Randolph Field and talked to the witness' brother, who told him he thought the witness knew something about the homicide and also stated to him that he had gone to San Antonio to join the tree army. This attorney said he communicated the matter to the attorney who had been last employed to defend appellant.

The sister of the witness testified that on the 29th of October, 1936, witness told his mother and her that he had witnessed the homicide and had seen deceased strike Roberto Gamez with a pistol. She said: "He left our house the night of the 29th of October and came here to San Antonio because they had sent for him and told him he had to go to the tree army. I don't know where he is now."

The affidavit of the absent witness attached to the motion for new trial shows that he would give the testimony set forth in the application for continuance. In said affidavit it is stated: "I did not disclose the above facts until the night of October 29, 1936, one day before I left for the CCC camp, and I related said facts to my mother and sister only at that time."

If it should be conceded that from the 25th of October the attorney last employed to defend appellant was diligent, nevertheless we are of opinion that the record fails to disclose the exercise of proper diligence on the part of appellant and the attorney he first employed. Nowhere in the application for continuance do we find an averment that appellant did not know that the witness was at the dance on the occasion of the homicide. If he knew it he or his counsel should have talked to him in an effort to find out what he knew about the homicide. Nowhere is it shown in the application or in the testimony upon the hearing of said application that the names of those present at the dance could not have been obtained by the use of reasonable diligence. If they could have been obtained then the presence of the witness could have been learned. It is true that the attorney who was first employed by appellant testified as follows: "I made diligent effort to find the names of all the witnesses to the shooting before the trial of that case against Juan Gamez." His statement of the matter constituted a mere conclusion. In 9 Tex. Jur., 136, it is said: "A mere affirmation of diligence in the affidavit is insufficient. The applicant must show that he has used diligence by definite, exact and certain

averments, stating facts from which the court may make legal deduction that diligence has been used, or allege facts which will excuse want of diligence." Under the circumstances, we think appellant failed to discharge the burden of showing the exercise of diligence to obtain the attendance of the witness.

In bill of exception No. 2 it is shown that the State offered in evidence, over appellant's objection, a complaint and information charging appellant with an aggravated assault on the deceased, alleged to have occurred approximately a year prior to the homicide. The bill, as qualified, shows that the State also introduced the judgment showing appellant's conviction for a simple assault. We think this testimony was admissible as tending to furnish a reason for ill-will on the part of appellant toward the deceased. See Branch's Ann. Tex. P. C., Sec. 1880.

Bill of exception No. 15 is concerned with the refusal of the court to instruct the jury that the deceased was not empowered to act as a special officer on the night of the homicide and had no legal right to carry arms on that occasion, or attempt an arrest, or to perform any of the duties of an officer. It appears from the testimony that Selma, the town in which the homicide occurred, was not in the precinct in which deceased had been appointed as a deputy constable. It appears further from the testimony that deceased had been requested by the proprietor of the dance hall to attend the dances for the purpose of keeping order. On the night of the homicide, according to the testimony of the State, deceased carried a pistol and had on a badge showing that he was an officer. We deem it unnecessary to decide whether he was empowered to act as a special officer on the occasion in question or whether he was authorized to carry arms. The testimony of no witness indicated that the deceased was attempting to arrest Roberto Gamez at the time of the homicide. The testimony of the State's witnesses shows that the deceased merely made an attempt to prevent a fight and that in doing so he grasped Roberto's shoulder. On the contrary, the testimony of the appellant and of Roberto was to the effect that deceased struck Roberto on the head with a pistol and knocked him down. In short, it was appellant's theory, given support in his testimony, that deceased made a brutal assault on Roberto and pointed his pistol at him, indicating a purpose to kill him. As already stated, neither the testimony of appellant nor that of the State showed any effort on the part of deceased to make an arrest. From the State's standpoint, deceased did no more than anyone present had the right to do, in preventing a fight at a public gathering. In the charge of the court appel-

lant was given the perfect right of self-defense. Under all the circumstances, the opinion is expressed that the instruction requested by appellant was properly refused.

Bill of exception No. 5 is concerned with the action of the court in permitting the district attorney to exhibit to State's witness Vesa sworn statement he had made prior to the trial, the objection being that under the guise of impeachment the State was seeking to get improper testimony before the jury; and, further, that the State was not surprised by the testimony of the witness. As qualified, we think the bill of exception fails to reflect reversible error. The effect of the qualification is that the witness had testified that he had never seen appellant and his two brothers around the deceased at the dance when they were not talking to him. Thereafter counsel for the State asked the witness if he had not said in a sworn statement he had made that he had seen several men following deceased during the progress of the dance. The witness said that the statement was incorrect, in saying that he had been in the dance hall all the time. However, he testified it was correct that he said he saw several men following the deceased around. He was then asked by counsel for the State if these men were appellant and his two brothers. The court certifies that the question was not answered. In this connection, we also notice bill of exception No. 6 which, as qualified, shows that the witness testified that appellant and another man followed deceased around on the occasion in question. Moreover, it is shown that the witness testified that he saw appellant and his brothers "around where Nieves Rangel was" on three occasions. Nowhere is it shown in the bills of exception that the jury were advised that the witness had said in his sworn statement that appellant and his two brothers had followed deceased around. We are of opinion that the bills, as qualified, fail to reflect reversible error.

It was in evidence that prior to the homicide deceased had made threats against the appellant. It is shown that these threats had not been communicated to the appellant. In connection with said threats the court charged the jury as follows:

"In this connection, you are charged that if the deceased prior to the homicide made any threat or threats against the defendant, which were not communicated to the defendant and of which the defendant had no knowledge at the time of the homicide, then you cannot consider such uncommunicated threats in justification of defendant's act, but such uncommunicated threats, if any, may be considered by you for the purpose of explaining the acts, if any, of the deceased at the time of the

difficulty, and to ascertain whether or not the deceased commenced the difficulty at the time of the homicide or made the first act or demonstration at that time."

Appellant objected to said charge as follows: "The defendant objects and excepts to the court's charge on threats made by the deceased in that said charge does not affirmatively present the issue but is negative in its character and does not instruct the jury as to when they can consider such threats and instructs them when they cannot consider such threats."

Under the holding of this court in Dunne v. State, 263 S. W., 608, it is not necessary to charge on uncommunicated threats. See, also, Gillean v. State, 53 S. W. (2d) 60, and authorities cited. In Trotter v. State, 36 S. W., 278, a charge on uncommunicated threats substantially the same as that under consideration here was held to be correct. The statement in the opinion in Dunne v. State, supra, that the charge in the Trotter Case was held to be too restrictive is incorrect. Appellant's exception was not well taken.

Appellant excepted to the charge of the court on murder without malice. In the charge the court defined murder without malice in the language of the statute. In applying the law to the facts the jury were instructed as follows:

"But if from the evidence you believe beyond a reasonable doubt that the defendant Apolonio Gamez on or about the 15th day of August, 1936, in the County of Bexar and State of Texas, without malice as hereinbefore defined did voluntarily kill the said Nieves Rangel by shooting the said Nieves Rangel with a pistol and not in his own self defense or in defense of his brother Roberto Gamez as hereinafter charged, as alleged in the indictment, you will find the defendant guilty of murder and assess his punishment at confinement in the penitentiary for not less than two nor more than five years."

In Smith v. State, 61 S. W. (2d) 835, a charge substantially the same as the foregoing was held to sufficiently apply the law of murder without malice to the facts.

Appellant has brought forward twenty-one bills of exception. We have not undertaken to discuss all of said bills, but have carefully examined same and fail to find that they reflect reversible error.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

GRAVES, JUDGE.—Appellant's attorneys have filed an exhaustive motion for a rehearing herein, evidencing much research and study, and again presenting the main contentions that have been disposed of in our original opinion.

However, the matter of the motion for a continuance filed by appellant, in which he desired such continuance in order to obtain the testimony of Jose Angel Martinez, has given us much concern. In our opinion appellant's originally employed attorney did not evidence diligence in ascertaining the fact of Martinez being a witness, nor any effort to ascertain his whereabouts. That his later employed attorney hardly had sufficient time to evidence any diligence, or lack thereof, is evident. But it will easily be seen that the fact of diligence can not be based on the time given the last employed attorney. If such could be true, no defendant could ever be forced to trial as long as he could employ himself an additional attorney on the eve of his case being called for trial.

While the matter is not free from doubt, nevertheless we feel that the original opinion herein correctly states the law, and properly decides this cause, and this motion is therefore overruled.

*Overruled.*