EARL PICKETT V. THE STATE.

No. 23130. Delivered June 6, 1945.
Rehearing Denied October 31, 1945.

578

The opinion states the case.

*Florence, Florence & Meredith,* of Gilmer, and *Nat Gentry, Jr.,* of Tyler, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of the unlawful killing of Aubrey Lee Capps without malice, and by the jury condemned to serve a term of five years in the penitentiary.

The facts show that appellant and the deceased had engaged in some kind of argument in a cafe in the town of Gladewater on August 19, 1944, at which place they were separated and appellant was taken in charge by officers, and caused to make bond, charged with a disturbance (of the peace). About 3:30 in the morning of August 20, 1944, sometime after the encounter at Gladewater, appellant and deceased again met in the city of Gilmer, in Upshur County, and had a difficulty that resulted in the death of Mr. Capps.

Appellant was indicted for this killing by the grand jury of Upshur County, and timely filed a motion for a change of venue, alleging statutory grounds therefor. It can be also said that appellant's attorneys offered evidence cogent and convincing enough to establish in the mind of the trial judge the truth of his grounds for such a change, the motion being controverted by the State and many witnesses heard thereon.

Upon an indication by the court that the motion for a change of venue would be granted, appellant then filed a further motion requesting that the court change such venue to Camp County, which was the nearest county seat to the court house of Upshur County. After hearing testimony relative thereto the trial court refused to change such venue to Camp County, but did change same to Tyler, in Smith County, to which action of the court appellant excepted.

Art. 565, C.C.P. provides that:

"Upon the grant of a change of venue, the cause shall be removed to some adjoining county, the court house of which is nearest to the court house of the county where the prosecution is pending, unless it be made to appear to the satisfaction of the court that such nearest county is subject to some objection sufficient to authorize a change of venue in the first instance."

Appellant's contention herein is that under the above statute it was the duty of the trial judge to transfer this cause to Camp County, the court house thereof being the nearest to that of Upshur County. Appellant fails to take notice of the unless clause in the latter portion of Art. 565, C.C.P., under which clause the trial court appears to be acting herein. It is shown by the court's order changing the venue that the same objections leveled at Upshur County were also present regarding Camp County; that the purported facts surrounding this killing had been discussed and opinions formed therein as to appellant's guilt, and some prejudice against appellant existed there; that a sister of the deceased had solicited and received funds from Camp County residents to assist in appellant's prosecution. It was also shown that to some extent there had been discussions and opinions formed as to appellant's guilt in Wood County, an adjoining county; that the deceased's father-in-law owned a large tract of land contiguous or near to Gregg County, and had many friends and relatives living in such section. The distances of nearby court houses from that of Upshur is Camp 18 miles; to the court house of Morris County 37 miles; Gregg County 22 miles; to Smith County 38 miles; to Wood County 52 miles.

The finding of the court that practically the same objections to Camp County existed as were shown to exist in Upshur County, we think, allows the trial court the privilege of operating under the last clause of Art. 565, supra, and under such a finding of the existence of prejudgment of this cause the careful trial court did not err in changing the venue to the County of Smith. We think the case of Cotter v. State, 21 S. W. (2d)

503, is an authority sustaining the action of the trial judge, as well as the cases therein cited. Had the testimony on this motion been silent as to any objections to the nearest county court house, we would have been confronted with a different question. The bill will be overruled.

Bill of exceptions No. 6 relates to the following question and answer of Dr. Marshall, a physician and surgeon, the question being:

" 'Q. Dr. Marshall, assuming that Aubrey Lee Capps had been hit on the neck with the fist and assuming further that he had been kicked some eight times by a man with shoes on, and assuming that those conditions, those blows by the fist and by the feet with the shoes on had been administered to Aubrey Lee Capps, from your inspection, were those wounds of the kind and character that would have resulted by a wound that could have been made with a shoe?' Whereupon defendant objected to said question and the answer which might be given thereto for the following reasons: 'We object because same is not a subject of expert testimony. Doctor is not in any better position to tell that than any man on this jury. Invades the province of this jury and for those reasons we object.' Which objections were overruled by the court and the defendant duly excepted, and said witness answered said question as follows: 'A. Yes, Sir.' "

Dr. Marshall had previously testified, describing the wounds as follows:

"There were lacerations above the right ear with concussions of the tissue in that area, and lacerations below the right ear with concussions in that area; that there was one large concussion area on the left frontal portion of the skull. That would be above the left eye. There were numerous ecchymodic (meaning tiny bruises), bruised areas over the surface of the face, extending from ear to ear and over the forehead, and I noticed one bruise on the left arm midway between the elbow and shoulder, and the left—one bruise on the left chest, about the same level as that bruise on the arm."

We are cited to the case of Maroney v. State, 29 S. W. (2d) 772, in which a doctor was allowed to testify that a knife wound on a deceased could not have been inflicted by deceased falling upon the knife. We think the case not to be in point herein. The primary difference in the cases cited us hereunder and the present bill is that the objectionable question was an endeavor to get the medical expert to testify as to what kind of instru-

ment *did cause* the wound, while in the present bill the doctor was merely asked whether or not a shoe on a foot could cause such wound. It is held in the case of Langford v. State, 63 S. W. (2d) 1027, that:

"* * * The doctors could, of course, give the location of the wounds upon the body of deceased as found by them, the condition of the wounds, and then state their opinion as to whether made with a blunt or a sharp instrument, but not whether they could have been made by an automobile running over deceased as that did not involve any technical skill or scientific learning, but common experience and common sense as to which the jury could judge for themselves. See Tolston v. State, 93 Tex. Cr. R. 493, 248 S..W. 50; Maroney v. State, 115 Tex. Cr. R. 298, 29 S. W. (2d) 772".

Mr. Vivian, the undertaker, testified:

"* * * I made no examination (of deceased's body) other than outside appearances. I did notice his head and face and it was bruised, and I noticed his ears. His right ear was torn loose from about the middle-ways. * * * The right ear was torn loose from the top down to about here (indicating) down about the lobe of the ear, and it was torn loose from this part (indicating) as well as behind. It was torn loose from the top down, both in front and behind."

The doctor was merely asked if the injuries such as he and the undertaker detailed could have been made with a man's shoe. It seems to us that such question would be on a parity with the question: Could such wounds have been made with a sharp or with a blunt instrument.

By bill of exceptions No. 17 it is shown that appellant timely and properly excepted to the trial court's charge in that same failed to charge the jury upon appellant's right of self-defense against a lesser or milder attack as is provided for in Art. 1224, P.C. It is shown by the State's testimony that some kind of an altercation had taken place some hours prior to this homicide between appellant and the deceased, and the parties were finally separated, the State's proof showing that appellant had called deceased a "cross-eyed son-of-a-bitch." From this point we copy a portion of appellant's testimony:

"I did not see them leave Gladewater, but while I was standing in front of the cafe Aubrey Lee Capps, said to be him, came up and he is the one I had trouble with that night. He just jumped up on the sidewalk, stuck his hand in his pocket and

started towards me, and says: 'I am going cut your guts out.' I grabbed him and we wrestled around there two or three rounds on the sidewalk; we both fell, I slung him aloose, and he fell on the sidewalk on to the pavement and that is about all there were to it. I might have kicked him a time or two. I don't hardly know what was going on. I was excited. I guess it lasted about half a minute. I did follow him out in the street, because I didn't want to be cut with that knife. I wanted to be sure he didn't get the knife open. I did not use any instrument that night on Aubrey Lee Capps save and except my hands when I grabbed him, and I did not intend to kill the man. I had nothing against him; I didn't know him. * * * He (deceased) could have been knocked out when we fell on the pavement. I didn't think he was knocked out when I was kicking him but he might have been when we hit the pavement. I didn't kick him over once or twice after we hit the pavement and the other times as we went off of there. I kicked him those two or three times on the hip. Did not kick him on the head, never did. I guess he was out when I was kicking him those times on the hip because he never did move."

An eye witness, George (Son) Davis, testified, after testifying about the scuffle on the sidewalk in front of witness' car:

"Aubrey Lee fell on the pavement and Earl Pickett walked out where he was at, put his hand on the right side of his head and hit him on the neck one lick. * * * He was kicking him on the head with his right foot and standing on his left foot. That is what I saw him do. He kicked him about four times at first; then his brother Peewee pulled him off, and told him that was enough. Earl jerked aloose, went back and kicked him some more. Then we pulled him off again, and he went upon the sidewalk. * * * He got about two steps the other side of me, turned and come back, and I stopped him and told him he wasn't going to kick him any more. He looked at me and he says: 'What in the hell you going to do about it' and I says: 'You are not going to stomp him any more.' He says 'O.K. son,' and when he said 'O.K. son,' I says: 'He is dead now.' * * * Then Earl said: 'I hope the cross-eyed son-of-a-bitch is dead'. At which time it seems appellant got into a car and left the scene."

It is provided in Art. 1224, P.C. that the provisions thereof do not become applicable unless a violent attack is in progress at the time. It has also been held that one who seeks to repel such unlawful lesser attack shall use no more force than was necessary for such purpose. See Martinez v. State, 142 Tex. Cr. R. 143, 151 S. W. (2d) 817; Fambro v. State, 142 Tex. Cr. R.

473, 154 S. W. (2d) 840,—and should resort to all other means except retreat in order to avoid the killing. Bryant v. State, 51 Tex. Cr. R. 66, 100 S. W. 371; Patterson v. State, 49 Tex. Cr. R. 613, 95 S. W. 129; Baltrip v. State, 30 Tex. App. 545, 17 S. W. 1106; Garello v. State, 31 Tex. Cr. R. 56, 20 S. W. 179; Woodring v. State, 33 Tex. Cr. R. 26, 24 S. W. 293; Hunnicutt v. State, 18 Tex. App. 499, 51 Am. Rep. 330.

Although a violent attack may be in progress, the person attacked must first resort to all other available and reasonable means of protection save retreat. See Holland v. State, 124 Tex. Cr. R. 348, 61 S. W. (2d) 838; Andrews v. State, 275 S. W. 1024, 101 Tex. Cr. R. 261.

An eye witness, Henry R. Smith, was in the cafe, and hearing a noise outside, he came out in company with George Davis and Otho Davis, and "When I got out there Aubrey was down on the street and Earl kicked him two or three times and stomped him two or three times. Didn't nobody do anything; only Peewee pushed him off. Peewee is Earl Pickett's brother. Then Earl started off; then I think he came back again and Peewee pushed him again; then he came back one more time I think; then he walked on up the street. When he came back that time he kicked him one more time. * * * I went and called the ambulance; then went back and Aubrey took his last breath when I went back out there about the time I got there. He throwed his stomach up, took a long breath and let down easy, and I went and called the ambulance again and they came." The deceased was lying in the street and when first struck in the neck by appellant, he did nothing but just relaxed and grunted when struck.

We think that under the facts herein appellant did not bring himself under the provisions of Art. 1224, P. C. This attack was not violent, was not in progress, nor did appellant resort to any other means to prevent such attack. The deceased merely seemed to be lying prone in the street when he received the blow and kicks from appellant that evidently caused his death.

Bills Nos. 3, 4, 5 and 10 all relate to the same proposition claimed as error and will be considered together. These bills had their inception because of the following colloquy while the witness Henry R. Smith was on the stand. It was shown by testimony that Otho Davis was probably an eye witness to this tragedy, and while Smith was on the stand the following took place: "Q. You know where Otho Davis is now? A. No sir; last time I heard of him he was living in Louisiana." Appellant's attorney then said: "I didn't know, this Otho Davis, was he—

been summoned as a witness?' Mr. Neill (District Attorney) 'Just tried to summon him.' " Appellant's attorney then said: "Don't want any insinuation that defendant is responsible for him not being here; want the court to instruct the jury they must not consider that; where he is or anything about it. This witness can know only from hearsay and we ask the court to instruct the jury not to consider the question and answer," which objection was by the court overruled. Thereafterward the court permitted the State to introduce in evidence the application of the county attorney for the witness Otho Davis, the subpoena for such witness, and the sheriff's return thereon showing the witness Otho Davis to be in Provincal, Louisiana. To all of these matters appellant objected and excepted as shown by these bills. It is shown by the trial court's qualification to bill No. 3 that only the portion of such application, subpoena and return thereon that related to Otho Davis was read to the jury; that same were not handed to nor examined by any member of the jury. It is evident from the above that the State was not making an unfavorable insinuation relative to appellant or to any of appellant's attorneys, nor imputing to them any misconduct on account of the absence of the witness Otho Davis, but was merely attempting to account for the absence at the trial of a material witness to this unfortunate killing. That the witness was present at the scene of the difficulty is amply proven, and Underhill on Criminal Evidence, 4th Ed., Sec. 147, says "* * * and the State is also allowed to account for absence of material witnesses it should have had present to escape adverse inference," citing Bussell v. State, 98 Tex. Cr. R. 170, 265 S. W. 164. In that case the accused claimed to have purchased certain stolen wire from one Jones, who claimed to have owned the wire. The cause was reversed because accused was not allowed to account for the absence of Jones at the trial, because Jones was in the penitentiary. To the same effect is the holding in the case of Macha v. State, 117 Tex. Cr. R. 232, 35 S. W. (2d) 721. To the same effect is the holding in the case of Woytek v. State, 100 Tex. Cr. R. 122, 272 S. W. 131. In the late case of Lera v. State, 144 Tex. Cr. R. 619, 165 S. W. (2d) 92, it was shown that officer Feigle and Cooper were present together at the scene of a homicide. The State showed by Feigle that Cooper, who was not present at the trial, was absent therefrom because of "having been injured in a wreck and as a result thereof was 'laid up.' " We there held no merit to be shown in such bill.

Appellant's bill of exception number 22 complains of the court's charge on uncommunicated threats. As we understand the

record appellant was not entitled to a charge either on communicated or uncommunicated threats. Appellant testified that when deceased approached appellant deceased made a movement as though to draw a knife, and said, "I will cut your guts out," and that they immediately went together. "It is not necessary to charge upon threats made at the time of and during the difficulty." Branch's Ann. Tex. P. C. Sec. 2075, p. 1168, and authorities cited. The threat mentioned above did not call for a charge upon communicated threats under the provisions of Art. 1258, P. C. The only other threat claimed to have been made by deceased was not communicated to appellant. Since Dunne v. State, 98 Tex. Cr. R. 7, 263 S. W. 609, was decided in 1924 it has been held that it is not ordinarily required to instruct upon uncommunicated threats. Emmons v. State, 100 Tex. Cr. R. 264, 273 S. W. 253; McRoberson v. State, 117 Tex. Cr. R. 405, 38 S. W. (2d) 82; Gillean v. State, 121 Tex. Cr. R. 329, 53 S. W. (2d) 60; Gamez v. State, 133 Tex. Cr. R. 481, 112 S. W. (2d) 196.

The charge as originally prepared omitted any instruction on uncommunicated threats, and appellant objected because of said omission. The court amended his charge and informed the jury of the substance of Art. 1258, P. C. and then told the jury that if threats had been made by deceased which had not been communicated to appellant that they might "consider such threats for the purpose of explaining, if they do, the acts and conduct of the deceased * * * at the time of the homicide." The court then told the jury in substance if they found that deceased had made threats against appellant, and at the time of the homicide did some act which manifested an immediate intention to execute the threat and appellant killed under such circumstances, to acquit him. The instruction as given left the jury at liberty to base their action on any threat whether communicated or uncommunicated. This was giving appellant more than he was entitled to under the law. Having induced the court to charge upon uncommunicated threats, appellant then objected to the charge as given as "too restrictive and as an undue limitation on defendant's rights in connection with the issue of uncommunicated threats." This objection was too general under Art. 658 C.C.P. in failing to specify in what particular the instruction given was thought to be too restrictive. It should have been suggested to the court in what particular the charge should have been amplified.

There is no testimony in the record as to who began the difficulty save appellant's, and if the jury believed his evidence it showed that deceased was the aggressor.

There are other bills of exceptions in the record, the total number being 22, the transcript containing 265 pages, and while we have carefully gone over each bill, to write on all of them would unduly prolong this opinion to too great a length. We have examined each bill in the light of appellant's excellent brief and oral argument in support thereof, and must content ourselves with saying that we are of the opinion that no error is shown justifying a reversal hereof. The judgment will therefore accordingly be affirmed.

ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

In his motion for rehearing and in his argument and brief in support of the motion appellant stresses two points which he urges were erroneously disposed of in our original opinion. The first is that the trial court erred in changing the venue to Smith County instead of Camp County as requested by appellant. This question was treated rather at length in our original opinion, but we have again examined the facts brought forward relating to the issue. Manifestly it would extend this opinion to unreasonable length to recite the evidence pro and con. We must state only our conclusion after reviewing the evidence, such conclusion being that the trial court can not be held to have committed error in sending the case to Smith County for trial, and that his reasons for not sending it to Camp County find support in the testimony.

The second point urged by appellant in his motion for rehearing is that his bills of exception three, four, five and ten exhibit error for which the judgment should be reversed. The subject of said bills is correctly and sufficiently stated in our original opinion without detailed repetition here. Supporting his contention that the said bills present reversible error appellant relies on Askew v. State, 59 Tex. Cr. R. 152, 127 S. W. 1037; Funk v. State, 84 Tex. Cr. R. 402, 208 S. W. 509; Hardin v. State, 55 Tex. Cr. R. 631, 117 S. W. 974; Clifton v. State, 46 Tex. Cr. R. 18, 79 S. W. 824; Parker v. State, 86 Tex. Cr. R. 222, 216 S. W. 178; Schultz v. State, 97 Tex Cr. R. 473, 262 S. W. 493; Mathews v. State, 109 Tex. Cr. R. 560, 5 S. W. (2d) 995; Johnson v. State, 119 Tex. Cr. R. 510, 45 S. W. (2d) 989. In the cases relied upon as supporting the conclusion announced in our original opinion herein there is manifest a modifying of the holding in some of the cases relied upon by appellant to the effect that the mere proof that unexecuted process had been issued for a State's witness carried with it an unsupported

implication that accused was responsible for the witness' absence. This broad inference seems illogical. The facts in each particular case and the manner in which the question arose should throw light on the subject. Such was intimated in the Johnson case (supra). There accused was a deputy sheriff and it was said in the opinion:

"If the state had proved that process for the witnesses had been issued, it would have perhaps carried an implication that appellant might have been responsible for getting the witnesses out of the way, as he is shown to have been a deputy sheriff at the time of the alleged offense, and up to the time of the trial.

The thought in the mind of the writer was that accused being an officer charged with the execution of process, proof that process had not been executed might carry the implication that accused was in some way responsible for the absence of the witness.

In the present case the district attorney asked one eye witness if he knew where an absent eye witness then was, to which inquiry the witness being examined answered that the absent witness was in Louisiana the last time he heard from him. We fail to discover any ground supporting the contention that such question or answer carried an implication that appellant was responsible for the witness being in Louisiana. At this point appellant's attorney asked the district attorney if the witness had been summoned to which direct inquiry the district attorney replied that they—the State—had only tried to summons him. Appellant's attorney then stated that he did not want any intimation that appellant or his attorney was responsible for the witness' absence. We think no such intimation could be drawn from what had occurred. The State later in the trial introduced in evidence over appellant's objection application for process, the process itself and the sheriff's return stating that the witness had not been summoned because he was in Louisiana. The jury received no more information than they already had from the district attorney's reply to appellant's attorney's question,—that the State had tried to summons the witness. The return on the process may have been hearsay, but we think not of that harmful character under all the circumstances demanding a reversal. Under the circumstances present the authorities cited in our original opinion are thought to support our conclusion that reversible error has not been shown.

The motion for rehearing is overruled.